JAMES E. SMITH, JR. *v.* J. K. WHITLOCK

(CC 647)

Submitted February 10, 1942. Decided March 31, 1942.

*Mahan, Bacon & White,* for plaintiff.

*Eary, Thompson & Vickers, W. H. Haynes* and *Homer A. Walkup, Jr.,* for defendant.

ROSE, JUDGE:

The Circuit Court of Fayette County, on its own motion, certified here the question arising upon the sufficiency of the amended declaration in an action of trespass on the case, in which James E. Smith, Jr., is plaintiff and J. K. Whitlock, defendant.

By his amended declaration, the plaintiff alleged that while he was a passenger in an automobile being driven on a public highway in Fayette County, known as U. S. Route No. 19, the defendant was the owner of a certain horse, and that it thereupon became his duty "to keep said horse from running at large on said public highway so as not to do damage or injury to the persons and prop-

erty of others lawfully traveling thereon, and more especially to the person of this plaintiff then and there lawfully riding in said automobile as aforesaid." The alleged negligence of the defendant is charged in the following language:

"Yet the defendant, not regarding his duty in that behalf, so carelessly, negligently and unlawfully suffered and permitted said horse to run at large upon said highway, that said horse ran into and against the automobile in which this plaintiff was riding, with the result that said automobile was caused to be wrecked, and as the proximate result of said wreck, this plaintiff was thrown with great force and violence against the top and other parts of said automobile, * * *."

A demurrer was interposed, based on the following grounds, stated briefly: (1) That in this state no common law forbids the owners of horses to allow them to run at large upon public highways; (2) that Code, 19-18-5, creating civil liability for damages caused to property by certain domestic animals, including horses, while running at large on a public highway does not contemplate liability for personal injuries; (3) that no statute of this state imposes civil liability upon the owner of horses running at large on a public highway for personal injuries caused thereby; (4) that the amended declaration is defective in that it does not allege that the horse was running at large with the knowledge of the defendant; (5) that the declaration alleges no act of defendant proximately causing the injuries complained of; and (6) that the declaration shows no cause or connection between the acts of negligence on the part of the defendant and the plaintiff's alleged injuries.

The demurrer was sustained and the questions raised thereby are all formally certified. The propositions of law thus raised may be summarized under two comprehensive heads: (1) Whether any statute of this state makes the owner of a horse allowed to run at large on a public highway liable for personal injuries to the person

of another resulting therefrom, and (2) whether there is, in this state, any such liability independent of statute?

Section 2, article 18, chapter 19 of the Code provides:

"It shall be unlawful for any horse, mule, ass, jennet, cattle, sheep or goat to run at large on any public road or highway or railroad right of way, and should any such stock injure or destroy the property of another while so running at large, the owner or manager thereof shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than five nor more than ten dollars."

Section 5 of the same article reads, in part:

"Should any stock, while running at large contrary to the provisions of sections two, three or four of this article, injure or destroy the property of another, the owner or manager of any such stock shall, notwithstanding any penalty imposed by said sections, be liable to the party whose property shall have been injured or destroyed for the amount of damage sustained by him by reason of such injury or destruction."

Much emphasis is placed on the first clause of section 2: "It shall be unlawful for any horse, * * * to run at large on any public road or highway." With strong reason, it is said that the defendant's violation of this express inhibition of the statute was negligence *per se,* and, hence, that defendant thereby became liable for the plaintiff's injury proximately resulting therefrom. We admit the force and legitimacy of this reasoning, but a majority of the court are of opinion that such a construction of the statute is too broad. Particularly, it must be noted that the statute prescribes no fine or other penalty for the mere running at large on a highway of any animal mentioned, and provides civil and criminal liability only for injury done by such animal to the property, not the person, of another. No reason is suggested for the peculiarly narrow liability thus created. While no civil liability beyond that for injury to or destruction of property is men-

tioned in the statute, on the other hand, there is no direct statement that personal injuries resulting from a violation of the act are *damnum absque injuria*. But the statute is in derogation of the common law, and the civil liability expressly established is for property damage only. We, therefore, do not consider ourselves warranted in holding that the statute means more than it actually says, or that it created civil liability wholly new and beyond the common law, other than that which is expressly stipulated in the statute itself.

The statute has been reenacted at least twice since 1917, and in each instance, the absence of an express provision for civil liability for injury to persons has been continued. We may thus recognize a fairly consistent purpose of the succeeding legislatures to create a new, non-common law liability only so far as the statute expressly goes, and no more. We do not consider the courts justified in reading into the statute a provision impliedly creating an additional liability which the lawmaking body has persistently, and with possible design, failed to include. These statutory provisions as they now stand, create a civil liability against the owners of certain domestic animals for *all* damages caused by them while trespassing on the lawfully enclosed lands of another, but fix liability on him for damage to property only, not to persons, when caused by animals running at large on a public highway. The courts can go no further.

But is there any common law or non-statutory rule making defendant liable under the facts indicated in the declaration herein? The English common law requiring the owner of domestic animals to confine them by fences to his own premises has never been recognized in the Virginias. Many other states have followed the same rule. Ingham, Law of Animals, p. 258, *et seq.* The English rule was ignored because the conditions in that country out of which it arose did not exist here. In the vast, wild, forested domain which the first settlers found here, such a law would have been utterly unnecessary and wholly impracticable. The conditions which made just and reasonable the policy at first adopted in this new land were

not permanent. What was safe in the beginning, later tended to become dangerous; what was once due care, might, under changed conditions, subsequently take on the character of gross negligence. The unwritten law did not change, but the basic situation to which it was being applied was continually altering, though in varying degrees, throughout the state. Some open country highways in this state have become busier than were the streets of cities in the Virginias when the original rule was adopted, while on other roads the traffic thereon remains almost primitive. Today, the owner's permitting a horse to wander on a highway may or may not be actionable negligence, depending on the character of the highway and its traffic. To let such an animal range on a great automobile boulevard, there to become involved in the confusion of incessant traffic in both directions and at great speed, in which human intelligence is often unavailing, may be the grossest of negligence; while a horse browsing along a remote, unimproved, unenclosed, little-used rural road, or mountain trail, may present no substantial risk of actual danger to travelers. This state has hundreds of miles of each of these types of road, with all kinds between. All these roads are equally "highways" under the law; all are subject to the same rules. Yet what would be dangerous on one road, may be perfectly safe on another; what would be legal negligence in one case, might be no evidence of want of care in another. These diverse conditions may account for the fact that the legislature has enacted no uniform statute to control in every case. Certain it is, that these considerations forbid that the courts shall, in the absence of action by the legislature, undertake to establish any universal rule applying to all highways in the state. Each case must stand on its own facts. The character of the road, the kind of traffic thereon, the time of day, and all other pertinent facts and the surrounding conditions, must be considered.

This status of the law is not as anomalous as might at first seem. While there is no statute creating any further liability for injuries caused by animals running at large

on the highways of the state, there is no legal vacuum in this field. Although the owner may not, by virtue of any statute, be held liable for damages done to a person by the running at large of his horse on a highway, such owner should have no greater immunity from liability for injury by his beasts on a public road than for a like injury committed on his own premises, and no greater immunity than he would have from injury by his other property negligently used. An owner must so use all his property, animate or inanimate, on his premises or on a highway, so as not carelessly or purposely to injure another. Very plainly, an owner might be held liable, aside from any statute, for negligence in the care of his horse on his own premises, as, for example, by turning it loose, or permitting it to run unattended, in a field filled with children at play. He cannot unreasonably expose persons rightfully elsewhere to unnecessary danger, and he has no greater right to do so on a highway. His liability arises, not because the injury occurs on a highway, nor by reason of any statute, nor from the fact that it was inflicted by his horse, but from the very right of persons, wherever they lawfully are, to be free from careless, or purposeful injury by another—from the fundamental law, not necessary to be written, but inherent in any conception of justice, that the owner of property shall not intentionally, or negligently, so use it, or permit it to be used, as to injure another.

A case not wholly inapplicable is *Walke* v. *Premier Pocahontas Collieries Co.*, 94 W. Va. 38, 117 S. E. 905, which involved a child injured by the negligent driving of defendant's unbridled horse, which escaped onto a private street between houses maintained by the defendant for its employees, and thereby injured the child playing thereon. This Court said, in syllabus one of that case:

> "It is negligence as a matter of law for a coal company, regardless of its custom or the custom of others, to hitch an untried horse, unaccustomed to such use, to steel rails, and without reins or lines attempt to drive him up a hill in the neighborhood of miners' houses built by such company

> in furtherance of its business, and by reason of such want of restraint the horse becomes scared and runs away through one of the streets or ways between such houses and does injury to an infant playing in the streets while residing with its parent, an employee of the company, in one of such houses."

If the owner of a horse is thus liable for negliently allowing it to escape and injure a person on a private way on the owner's premises, no possible reason appears why a like injury to a person on a highway would not also be actionable.

This conclusion has been reached in other states: "For any negligence in the keeping of an animal whereby injury is occasioned, the owner is always responsible. In determining the owner's liability for injuries inflicted, the criterion usually adopted is whether or not he could reasonably have anticipated the occurrence." 2 Am. Jur., Animals, sec. 59, p. 737. An illustrative case is *Drew* v. *Gross*, 112 Ohio St. 485, 147 N. E. 757, 758, in which the syllabus by the court says:

> "The owner of a domestic animal is responsible for negligence in its keeping whereby damage is occasioned.
>
> "It is a question of fact for the jury whether an owner of horses who turns them loose unattended into a field adjacent to a much-traveled highway in the nighttime, the fence of which field is in such defective condition that the horses may easily stray out onto the highway, could have anticipated that one of the horses would stray out onto the highway and collide with an automobile thereon."

In the opinion in this case, at page 491, it is said that:

> "A statute is not always required to establish the duty of ordinary care. The duty may arise from statute, or it may arise from ordinance, from contract, or from the relation of the parties. Apart from specific statute the law imposes upon every person the duty of using his own property so as not to injure his neighbor. As conditions

change and modes of life alter, the duty to observe ordinary care in the use of one's own property, while not altering in its essentials, will alter in its details. What ordinary care demands depends always upon the circumstances of the case, an important factor among which is the fact whether the injury could or could not have reasonably been anticipated from the acts done or left undone by the defendant. When the state was established it was not in general unsafe to permit domestic animals to run at large in the highway outside of the confines of municipalities, and damages from so doing could not generally be reasonably anticipated. With the growth of traffic, particularly automobile traffic, the situation is changed, but the duty to observe ordinary care remains the same. This duty in modern times requires that the owner of livestock exercise ordinary care not to let his livestock stray out onto a much-traveled highway, because under our modern traffic conditions he can reasonably anticipate that if the livestock stray onto such a highway they are apt to damage persons or property."

The declaration before us merely alleges negligence in that the defendant allowed his horse to run at large on a highway without describing the highway or describing the alleged negligence, the traffic conditions or the surroundings, and follows by simply charging the act of the horse in running against the automobile, in which plaintiff was riding, without describing the act, and concludes with the statement that the vehicle was thus wrecked, injuring the plaintiff, but sets out but little of the particulars of the accident. This is not sufficient. The facts pleaded must show the defendant should have anticipated that his acts or omissions might reasonably have been expected to result in injury to persons on the highway. There may or may not be liability against the defendant, depending upon the principles hereinbefore discussed. The facts pleaded do not make out a case. If there are further facts by which the case can be brought within the rule hereby approved, the declaration should be amended accordingly. Otherwise, the case should be dismissed.

These conclusions dispose of all the questions certified except the fourth. We hold that each of the other grounds assigned in the demurrer correctly states the law and required the sustaining of the demurrer. But it is not necessary that the declaration should allege that the defendant knew that his horse was running at large on the highway. The allegation that the "defendant negligently and unlawfully suffered and permitted said horse to run at large upon said highway" is sufficient if the declaration were otherwise adequate. *Neil, Admr.* v. *W. Va. Timber Co.*, 75 W. Va. 502, 84 S. E. 239; *Hoffman* v. *Dickinson*, 31 W. Va. 142, 6 S. E. 53.

*Affirmed.*