# Richmond

## L. L. RICE v. SAMUEL CHESTER TURNER.

November 27, 1950.

Record No. 3685.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*T. Warren Messick* and *F. A. Lewey*, for the plaintiff in error.

*Stuart B. Carter*, for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

On November 19, 1947, S. G. Turner, with three companions, was driving south on Lee Highway (Route 11), in Botetourt county, when his automobile collided with a cow owned by L. L. Rice. He instituted this action and recovered a verdict and judgment for $6,336.19, for personal injuries to himself, and damages to his automobile, resulting from the collision. Rice obtained this writ of error to review the judgment.

· Rice, hereinafter referred to as "defendant," owns a farm approximately 10 miles north of the city of Roanoke, lying

on both the east and west sides of Lee Highway. At the time of the accident, he had on this farm approximately 20 milch cows under the care and supervision of a manager, James H. Brogan, and two employees, Robert M. Williams and Savannah Williams, his wife. The cows were usually kept night and day on the east side of the highway in a pasture enclosed by a wire fence, but they were driven twice daily out of the pasture through a gate, across the highway, up a lane, to a dairy barn on the west side of the highway where they were fed and milked, and immediately thereafter driven from the barn to the pasture.

On November 19, 1947, around 6:00 p. m., the cows were driven out of the barn. They were stopped at the mouth of the lane, on the edge of the highway, while Brogan walked into the highway, stopped traffic with a red lantern and flashlight, and when he ascertained that the cows could be moved in safety, he instructed his two helpers, Robert and Savannah Williams, to drive them across the highway into the pasture. The gate was then shut and fastened.

Approximately two hours later—that is, around 8:00 p. m. —plaintiff, driving at a speed ranging from 40 to 45 miles an hour south on the three-lane highway, collided with a cow owned by defendant, which suddenly appeared in front of his car, running from the east to the west across the hard surface. The impact resulted in the death of the cow, personal injuries to plaintiff, and damage to his automobile to the extent of $246.00.

The trial court held that proof of the fact that the cow was on the highway, unattended, was not in itself sufficient to establish a *prima facie* case of negligence on the part of defendant—that is, the doctrine of *res ipsa loquitur* did not apply.

This is a correct construction of the statute (Sec. 8-886 of the 1950 Code), as the pertinent parts thereof read: "It shall be unlawful for the owner * * * of any horse, mule, cattle, hog, sheep, or goat, to permit any such animal * * * to run at large beyond the limits of his own

land * * * ." This language implies knowledge, consent, or a willingness on the part of the owner for such domestic animals to run at large. The statute does not cover a situation where the owner has used ordinary care to keep his stock confined to his premises. *Gardner* v. *Black*, 217 N. C. 573, 9 S. E. (2d) 10; *Lloyd* v. *Bowen*, 170 N. C. 216, 86 S. E. 797; *Smith* v. *Whitlock*, 124 W. Va. 224, 19 S. E. (2d) 617, 140 A. L. R. 737; 3 C. J. S., Animals, sec. 131, p. 1231.

A statute is not necessary to establish the duty of ordinary care. Such duty may arise from statute, from a municipal ordinance, or from the relation of the parties. The common law imposes upon every person the duty to exercise ordinary care in the use and maintenance of his own property to prevent injury to others.

In the early days of the Commonwealth it was not considered unsafe for domestic animals to run at large outside of the limits of municipalities, and damages resulting from animals at large on the highway could not be reasonably anticipated. However, with the advent of the motor vehicle, the extensive network of improved highways, the phenomenal increase in traffic, and the speed permitted by law, quite a different situation has been created. Under these circumstances, the duty to exercise ordinary care for the protection of others requires the owner of domestic animals, in the absence of statute, to exercise ordinary care to keep them off much traveled highways. It is common knowledge that a cow at large on a highway not infrequently becomes frightened at the glare of headlights of an automobile, and when so frightened it is as likely to run directly in front of the automobile as it is to run in any other direction. Under such circumstances, a cow, unattended, is a source of potential danger to lawful users of the highways.

We find no error in the ruling of the trial court, instructing the jury that it was the duty of defendant to

exercise ordinary care to prevent his cow from running at large beyond the boundaries of his own land.

Defendant cotnends that the evidence for plaintiff is insufficient to sustain the verdict, finding that he failed to exercise ordinary care to prevent his cow from straying from his premises on the highway.

Plaintiff conceded that defendant exercised ordinary care in maintaining his fence enclosing the pasture on the east side of the highway. At least he offered no evidence tending to prove the contrary. The only evidence introduced to prove negligence on the part of defendant consisted of five photographs (taken several months after the accident) of the lane, the barn, and the fences on the west side of the highway. It appears from these photographs that there is a wire fence on each side of the lane leading from the highway to the side of the barn, and that the lane is not enclosed at either end. The wire fence, extending a short distance on the south side of the lane, appears to be old and somewhat dilapidated, but this fact is immaterial, as the uncontradicted testimony is to the effect that the cows, when in the barn or in the lane, were under the immediate control of defendant's employees.

The photograph marked "Plaintiff's Exhibit 5," does not appear from the testimony to be relevant to the issue of negligence. It was not sufficiently identified in the testimony. The shape of the roof of the barn shown in this photograph is not the same shape as the roof of the barn, admittedly owned by defendant, shown in the other four photographs.

The only other testimony tending to establish defendant's negligence is alleged oral statements claimed to have been made by J. H. Brogan to J. H. Stewart, and S. P. Webster, two witnesses for plaintiff.

Shortly after the accident, J. H. Stewart, who lived near by, went to the scene of the collision. He, in an effort to assist plaintiff in ascertaining the owner of the cow, went to defendant's home where Brogan lived, told Brogan of the

accident, and together they walked to the scene. Brogan stated that the cow was owned by defendant. Stewart's testimony as to a part of his conversation with Brogan is as follows:

"Q. What did Brogan say, if anything—what did he say with reference to the cow?

"A. He said they were late doing their work and it was after dark when they milked, and that they were putting the cows across the road and he was watching the traffic and the other man was putting the cows across the road and the cow never was put up, she was left out.

"Q. He said the cow never was put up, she was left out?

"A. Yes, sir, just left out; I asked him how she got out and he said she didn't get out, she was left out.

"Q. Did he make any reference as to whether or not she was under a fence?

"A. He said 'when she is not over here she is out.'

"Q. 'Not over here' what did he mean by not over here?

"A. She was not over in the pasture field; she was turned out of the barn at the milk house, she was out."

S. P. Webster testified that on this occasion he heard Brogan say:

" 'We bring the cows across the road, milk them, we milk them and then we take them back' and said 'We missed this one, she was left out.' "

Brogan denied making the statements, but assuming that he did, what do they mean? If they are interpreted to mean that Brogan, at the time he drove the cows into the pasture, knew that this particular cow had been left on the west side of the highway, and made no effort to find her, then he intentionally permitted the cow to remain outside of the enclosure. The plaintiff does not claim this is a fair construction of the alleged oral statements, as his own witness, Webster, testified:

"Q.   When was the first time he (Brogan) missed the cow?

"A.   I don't suppose he had missed it."

The only fair and reasonable construction that can be placed upon the statements is that Brogan intended to express his own opinion as to how the cow might have strayed from defendant's premises on the highway.   The witnesses themselves did not construe Brogan's statements to them to mean that Brogan at the time knew that the particular cow was not among the herd when they were driven across the highway.   They merely expressed Brogan's opinion and were not intended to be statements of fact. They were made some time after the accident and were not a part of the *res gestae*.   At most, they were mere expressions of opinion of an employee, which opinion is not pertinent or admissible evidence against the employer.  *Lane v. Bryant*, 9 Gray (75 Mass.) 245, 69 Am. Dec. 282; *Field v. North Coast Transp. Co.*, 164 Wash. 123, 2 P. (2d) 672, 76 A. L. R. 1114.

The uncontradicted evidence for defendant is that his employees exercised ordinary care and caution in driving the cows from the barn across the highway into the pasture. Each of the three employees testified that when the cows were driven out of the barn, and down the lane, Brogan, with a red lantern and flashlight, was on one side of them in the highway, Robert Williams, with a lighted lantern, on the other side, and Savannah Williams behind, driving the cows between the other two employees across the highway into the pasture.   After the gate was shut and fastened, Brogan went to his home, satisfied that all of the cows had been driven from the barn to the pasture.   His first knowledge of the fact that one of the cows was not in the enclosure was when Stewart told him of the accident.   Robert and Savannah Williams testified that they saw this particular cow as she crossed the road and went through the gate in the pasture.   They returned to the barn, where they worked for nearly an hour, washing the containers, fixing the feed

for morning, and doing other chores. They said if a cow had been in or around the barn during that time they could, and would have seen it.

Plaintiff's evidence is insufficient to prove that the cow was at large with the knowledge and consent of defendant, or that her escape from defendant's premises was due to his negligence.

The judgment will be reversed, the verdict set aside, and final judgment entered for defendant.

*Reversed and final judgment.*