EIXENBERGER, Appellant v. BELLE FOURCHE LIVE-
STOCK EXCHANGE et al., Respondents
(58 N. W.2d 235)

(File No. 9312. Opinion filed April 21, 1953)
Rehearing denied July 14, 1953

2

**Gale B. Wyman,** Belle Fourche, **Percy H. Helm, Roswell Bottum,** Sturgis, for Appellant.

**H. F. Fellows,** Rapid City, **Penfold & Overpeck,** Belle Fourche, for Respondents.

SICKEL, J.    This action was brought by Edward M. Eixenberger, as plaintiff, against Max Schuft, Jesse Guidinger, T. W. Thompson, Henry T. Thompson, William G. Schuft, partners doing business as the Belle Fourche Livestock Exchange, and Jesse Guidinger, personally, defendants, to recover damages for injuries received by plaintiff in an accident which occurred on U. S. Highway 212 as the result of a col-

lision between an automobile driven by plaintiff and two horses belonging to the partnership. The jury found for plaintiff and assessed his damages at $30,000. Thereafter, defendants made a motion for judgment notwithstanding the verdict, which motion was granted, and judgment was entered for defendants. Plaintiff appealed.

The highway referred to above is a main public thoroughfare crossing the state from east to west, passing through Belle Fourche and extending in a northwesterly direction through Wyoming and to Miles City, Montana. It was constructed under the specifications of the Federal Bureau of Public Roads, with a bituminous surface. The Livestock Exchange property is located about two miles northwest of Belle Fourche and about 125 yards south of the highway. Defendants kept three horses about their premises for use in their business. When not in use the horses were confined in a pen or yard, or were permitted to be at large to graze in the unfenced area in the vicinity of the pavilion and of the highway. On December 21, 1949, between the hours of five and six a.m., plaintiff left his home in Belle Fourche and drove northwestward on this highway, on his way to work for the Larson Construction Company. At a place about one and one-half miles past the sales pavilion two of the horses came upon the highway proceeding from the north, and collided with plaintiff's automobile, damaging the car, injuring plaintiff severely and killing the horses.

Appellant contends that the verdict of the jury is supported by substantial, credible evidence, Meylink v. Minnehaha Co-op. Oil Co., 67 S.D. 187, 291 N.W. 572, and that therefore the court erred in setting aside the verdict and entering judgment for defendants notwithstanding the verdict. It is appellant's contention that the evidence is sufficient to justify the jury in finding that defendants permitted their horses to run at large unattended in the vicinity of a heavily traveled trunk highway, without fence or barrier to prevent them from straying upon the highway; that this constituted negligence and was the proximate cause of plaintiff's injury.

Negligence is merely a convenient term used to designate instances of failure to conform to standards of per-

sonal conduct. The inquiry is whether plaintiff had a right, protected against the hazard here involved by some rule of law which defendants' conduct violated. The first consideration is plaintiff's right upon the highway. He had the right to travel the highway at night at a speed of 35 miles per hour, on his own side of the road with the headlights on, as he was doing at the time, and at the place where the accident occurred. Defendants contend that plaintiff lost his right to protection against this hazard by failure to look when by looking he could have seen the horses in time to avoid the collision. On this issue the facts are undisputed. Calvin Cutschall, a witness for plaintiff, was riding to work in plaintiff's car as a passenger at the time of the accident. He testified that the horses came up suddenly and out of the ditch or borrow pit on the right hand side of the road and charged into the car. One horse hit the front end of the car and was thrown back over the hood with an awful crash, breaking the windshield. The witness further testified that the lamps of the car were lit; that he caught a glance at the horses just an instant before they collided with the car.

Plaintiff testified that he was driving along at 35 miles per hour when all of a sudden the horses came up right out of the borrow pit, just lunged right out in front of the car and struck it; that he had no time to think about stopping, but put his foot on the brakes just as the horses and car collided. The feet of one of the horses came through the windshield. These were the only eyewitnesses to the accident. In view of this testimony there is no basis for the assumption that the horses appeared in full range of plaintiff's lights or at such a distance that plaintiff could or should have seen the horses in time to avoid the accident. On the contrary it affirmatively appears from the evidence that the horses did not come within the range of plaintiff's vision until they came upon the traveled portion of the highway from the north or right side an instant before the collision and after it was too late to avoid the collision. The so-called rule of safety was inapplicable under the undisputed facts. Neither do these undisputed facts show contributory negligence on the part of the plaintiff.

█ Whether there is any rule of law by which plaintiff's right upon the highway, as we see it, was protected, and if so, whether such rule was violated by defendants' conduct is the decisive issue in this case. The general rule is stated in 2 Am. Jur., Animals, § 60, p. 738, as follows: "At common law an owner of a domestic animal is under no legal obligation to restrain it from being at large on the highway unattended, and he is not liable for damages for an injury resulting from its being so at large unless he has knowledge of vicious propensities of the animal or unless he should reasonably have anticipated that injury would result from its being so at large on the highway".

There is no statute in this state making the owner liable for personal injuries which result from allowing domestic animals to run at large on the highways. Neither is it claimed that these horses had any propensities other than those which are natural or usual in horses when at large and unattended. The gist of the action is that the danger here involved should have been reasonably anticipated and that it was the duty of the defendants to protect plaintiff against it; that the failure to perform that duty was negligence.

In the case of Smith v. Whitlock, 124 W.Va. 224, 19 S.E. 2d 617, 619, 140 A.L.R. 737, the circumstances and the issues presented to and decided by the court were similar to those presented on this appeal. In West Virginia as in South Dakota there was no statutory liability. The court in its opinion, stated:

"But is there any common law or nonstatutory rule making defendant liable under the facts indicated in the declaration herein? The English common law requiring the owner of domestic animals to confine them by fences to his own premises has never been recognized in the Virginias. Many other states have followed the same rule. Ingham, Law of Animals, p. 258 et seq. The English rule was ignored because the conditions in that country out of which it arose did not exist here. In the vast, wild, forested domain which the first settlers found here, such a law would have been utterly unnecessary and wholly impracticable. The conditions which made just and reasonable the policy at first adopted in this

new land were not permanent. What was safe in the beginning, later tended to become dangerous; what was once due care, might, under changed conditions, subsequently take on the character of gross negligence. The unwritten law did not change, but the basic situation to which it was being applied was continually altering, though in varying degrees, throughout the state. Some open country highways in this state have become busier than were the streets of cities in the Virginias when the original rule was adopted, while on other roads the traffic thereon remains almost primitive. Today, the owner's permitting a horse to wander on a highway may or may not be actionable negligence, depending on the character of the highway and its traffic. To let such an animal range on a great automobile boulevard, there to become involved in the confusion of incessant traffic in both directions and at great speed, in which human intelligence is often unavailing, may be the grossest of negligence; while a horse browsing along a remote, unimproved, unenclosed, little-used rural road, or mountain trail, may present no substantial risk of actual danger to travelers. This state has hundreds of miles of each of these types of road, with all kinds between. All these roads are equally 'highways' under the law; all are subject to the same rules. Yet what would be dangerous on one road, may be perfectly safe on another; what would be legal negligence in one case, might be no evidence of want of care in another. These diverse conditions may account for the fact that the legislature has enacted no uniform statute to control in every case. Certain it is, that these considerations forbid that the courts shall, in the absence of action by the legislature, undertake to establish any universal rule applying to all highways in the state. Each case must stand on its own facts. The character of the road, the kind of traffic thereon, the time of day, and all other pertinent facts and the surrounding conditions, must be considered.

"This status of the law is not as anomalous as might at first seem. While there is no statute creating any further liability for injuries caused by animals running at large on the highways of the state, there is no legal vacuum in this field. Although the owner may not, by virtue of any statute,

be held liable for damages done to a person by the running at large of his horse on a highway, such owner should have no greater immunity from liability for injury by his beasts on a public road than for a like injury committed on his own premises, and no greater immunity than he would have from injury by his other property negligently used. An owner must so use all his property, animate or inanimate, on his premises or on a highway, so as not carelessly or purposely to injure another. Very plainly, an owner might be held liable, aside from any statute, for negligence in the care of his horse on his own premises, as, for example, by turning it loose, or permitting it to run unattended, in a field filled with children at play. He cannot unreasonably expose persons rightfully elsewhere to unnecessary danger, and he has no greater right to do so on a highway. His liability arises, not because the injury occurs on a highway, nor by reason of any statute, nor from the fact that it was inflicted by his horse, but from the very right of persons, wherever they lawfully are, to be free from careless, or purposeful injury by another—from the fundamental law, not necessary to be written, but inherent in any conception of justice, that the owner of property shall not intentionally, or negligently, so use it, or permit it to be used, as to injure another."

■ Defendants owed to plaintiff a duty to protect him against the hazard here involved if the danger should have been reasonably anticipated. Traill v. Ostermeier, 140 Neb. 432, 300 N.W. 375; Drew v. Gross, 112 Ohio St. 485, 147 N.E. 757; Galeppi Bros. Inc. v. Bartlett, 9 Cir., 120 F.2d 208; Lins v. Boeckeler Lumber Co., 221 Mo. App. 181, 299 S.W. 150; Rice v. Turner, 191 Va. 601, 62 S.E.2d 24.

■ Typical among the cases cited above is Drew v. Gross decided by the Supreme Court of Ohio. That action was brought to recover damages sustained in a collision between a horse and an automobile, upon the public highway. The horse was loose upon the highway, and suddenly leaped in front of the automobile causing it to be ditched. It was claimed by plaintiff that the defendant was negligent in turning the horse out into a field adjacent to the highway with no sufficient fence between the field and the highway to pre-

vent the horse from wandering onto the highway. Plaintiff also claimed that the car was so close to the horse at the time that it was impossible to avoid the collision. A verdict was directed for defendant and plaintiff appealed. The issues of law and fact involved in that case are strikingly analogous to the issues in this case. In disposing of the issues the Supreme Court said:

"The owner of a domestic animal is responsible for negligence in its keeping whereby damage is occasioned. The principle test, as to whether the owner is or is not negligent, is whether he could or could not reasonably have anticipated the occurrence which resulted in the injury. It is a question of fact for the jury whether an owner of horses who turns them loose unattended into a field adjacent to a much-traveled highway in the nighttime, the fence of which field is in such defective condition that the horses may easily stray out onto the highway, could have anticipated that one of the horses would stray out onto the highway and collide with an automobile thereon.

"The owner of livestock is chargeable with knowledge of the propensities of his livestock, and is bound to know that horses or cattle when placed in an inclosure where the fence is so defective that they may easily pass out of the inclosure and onto adjacent property will probably do so.

"It is common knowledge that many animals, including horses, easily take fright at the glare of the lights that are carried by automobiles when driven in the night season, and it is also common knowledge that when horses which are loose are thus frightened they are as apt, by reason of their fright, to run directly into the front of the automobile, or immediately across in front of it, as they are to make any other kind of movement. * * *

"If domestic animals injure any person or property while wrongfully in the place where the injury was done, the owner is liable, without notice that the animal was accustomed to do wrong or mischief. * *

"A statute is not always required to establish the duty of ordinary care. The duty may arise from statute, or it may arise from ordinance, from contract, or from the relation of

the parties. Apart from specific statute the law imposes upon every person the duty of using his own property so as not to injure his neighbor. As conditions change and modes of life alter, the duty to observe ordinary care in the use of one's own property, while not altering in its essentials, will alter in its details. What ordinary care demands depends always upon the circumstances of the case, and a primary factor among those circumstances is the fact whether the injury could or could not have reasonably have been anticipated from the acts done or left undone by the defendant. When the state was established it was not in general unsafe to permit domestic animals to run at large in the highway outside of the confines of municipalities, and damage from so doing could not generally be reasonably anticipated. With the growth of traffic, particularly automobile traffic, the situation is changed, but the duty to observe ordinary care remains the same. This duty in modern times requires that the owner of livestock exercise ordinary care not to let his livestock stray out onto a much-traveled highway, because under our modern traffic conditions he can reasonably anticipate that, if the livestock stray onto such a highway, they are apt to damage persons or property." [112 Ohio St. 485, 147 N.E. 758.] We are in accord with the views thus expressed in Drew v. Gross, and in the authorities cited herein to the same effect.

█ It is an undisputed fact that the two horses involved in this accident were the property of the defendants, were subject to their control, and were at large and unattended at the time of the collision. The character of the highway, the kind of traffic thereon, the time of day and other pertinent facts, which we have already described, were known to the defendants. Reasonable minds might very well have drawn different conclusions from the evidence as to whether the defendants should have reasonably anticipated the hazard of horses running at large in the vicinity of this highway at the time and under the circumstances shown by the evidence.

Defendants, however, deny that they were responsible for the horses being on the highway at the time of the accident Their witnesses testified that when the horses were not being used in connection with the operation of the sales yard they were kept in a sales pen; that defendants had no know-

ledge that the horses were at large, and that defendants had placed them safely in one of the sales pens on the previous evening, and left them there. The testimony also shows that is was impossible for the horses to open the gate to the sales pen in which they were being kept. Defendants deny all knowledge or responsibilty for the fact that the horses were out of the pen at the time of the accident.

On the other hand, plaintiff's witness Cutschall testified that he was employed as a mechanic by the Larson Construction Company and rode to and from work on this highway every working day for two months before the accident; that he had seen these horses several times in the vicinity where the accident occurred, roaming in the open space between the railroad tracks and the highway. Richard Gray, who was employed as a truck driver for Barnoid Sales Company, testified that he positively saw these horses on the south side of the road in the vicinity of the sales yard at about 4:30 on the evening before the accident, and saw them at large south of this road close enough to identify them on several other occasions during the two weeks preceding the accident. L. P. Larson, contractor, testified that he had seen the horses at about 4 o'clock on the evening before the accident near the same location between the highway and the railroad tracks and saw them at several other times grazing south of the highway. Thomas Truman, agent for Socony Vacuum Company, testified that he saw these same horses twice on December 20th, once at 8:30 in the morning and again at 6:30 in the evening; that it was then dark and the horses came out of the borrow pit upon the highway in front of his truck and that he was obliged to stop his truck to avoid striking them. The question of defendants' responsibility for the horses being at large in the vicinity of this highway at and prior to the time of the accident is one of fact upon which the evidence is conflicting and contradictory.

■ The verdict is supported by substantial credible evidence. Therefore we have concluded that the circuit court erred in setting aside the verdict and entering judgment for defendant.

The order setting aside the verdict and the judgment for

defendants are reversed with directions to enter judgment for plaintiff on the verdict.

All the Judges concur.

LEEDOM, J. (concurring). In reaching the foregoing conclusion the court has declined to apply to the facts of this case the rule of one of the leading cases in this field of the law, Fox v. Koehnig, 190 Wis. 528, 209 N.W. 708, 49 A.L.R. 903, to the effect that livestock at large on a highway under circumstances essentially the same as in this case, cannot be the proximate cause of damages arising from an accident such as the one here involved. While I concur in the court's opinion it is my view that there do exist within South Dakota particularly, in the more remote rural parts and in open range land or so-called cattle country, areas presenting somewhat different circumstances in which livestock permitted to be at large could not render the owner liable in this type of accident.