**Susan J. SYBESMA, Plaintiff and Appellee,**

v.

**Sam SYBESMA, Jr., Defendant and Appellant,**

v.

**Joel H. SYBESMA, Third–Party Defendant and Appellee.**

No. 18623.

Supreme Court of South Dakota.

Argued Jan. 10, 1995.

Decided July 5, 1995.

Robert R. Schaub, Albert Steven Fox, David J. Larson, Larson, Sundall, Larson, Schaub & Fox, P.C., Chamberlain, for plaintiff and appellee and third party defendant and appellee.

John Simko, Mark J. Welter James E. Moore, Woods, Fuller, Schultz, & Smith, P.C., Sioux Falls, for defendant and appellant.

TUCKER, Circuit Judge.

This is an appeal from a jury verdict awarding Plaintiff and Appellee, Susan J. Sybesma $500,000.00 in damages, plus pre-judgment interest and taxation of costs against Defendant and Appellant, Sam Sybesma, Jr., for injuries Susan sustained when she was trampled by a stock cow. Sam asserts, among other things, that the trial court erred when it denied his motion for new trial and motion for judgment notwithstanding the verdict. We affirm.

## FACTS

The Defendant and Appellant, Sam Sybesma, Jr. (Sam), operated a farm and ranch near Platte, South Dakota. Sam employed his son, Dean, as stock herd manager. Dean resided on the family farm. Sam occasionally employed his son, Joel, in the dairy operation. Sam acknowledged at trial that Dean had greater experience than Joel with stock cows.

Joel's wife, Susan Sybesma (Susan) grew up in suburban New York. She had worked at a Hardees fast-food restaurant before her marriage to Joel and after their marriage, she occasionally worked with him doing janitorial work. Susan had limited experience working on the farm. Susan had observed Joel working with dairy cattle and she had seen a cattle prod used with dairy cattle and hogs in confined areas. Prior to September 28, 1989, the date of the incident, Susan had not assisted her husband or his family when they moved stock cows.

The pasture the stock cows occupied provided poor grazing, so Sam decided to move the cattle to a failed soybean field approximately four-and-a-half miles away. The weather was hot and the drive began in the afternoon rather than the Sybesmas' usual practice of moving cattle in the cooler morning hours. The herd consisted mainly of cow-calf pairs. Dean, Joel, and Susan assisted Sam in moving the cattle. Sam drove a tractor and pulled a hay wagon ahead of the herd. Dean followed in a pick-up and Joel and Susan followed in a separate pick-up. Dean testified that the drive was difficult because the cattle wandered through unblocked gates or poor fences into a shelter belt and a corn field. One particular red Hereford cow became separated from her calf and grew increasingly stubborn. Dean testified that he attempted to herd the cow with his pickup, even nudging her or pushing her with the vehicle, or revving his engine behind her. Dean testified that at one point he exited his pick-up, but the cow "turned around and was lining up with me, looking like she was going to charge me." In anticipation of the cow charging him, Dean jumped into the back of the pick-up.

Dean then went ahead to the new pasture to check the gates and fences and he directed Joel and Susan to move the rebellious cow toward the pasture. He told them that the cow was tired, but he did not give them any other warning or direction how to handle the cow.

Susan, while under the direction of her husband, Joel, exited the pick-up and Joel handed her an electric cattle prod. Susan approached the cow, then attempted to turn the cow by jolting it in the face with the cattle prod. The enraged cow charged Susan and trampled her. Susan sustained significant permanent injuries in the incident, including a broken back. This action resulted.

## DISCUSSION

ISSUE I: DID THE TRIAL COURT ERR IN REFUSING TO INSTRUCT ON DANGEROUSNESS AS AN ELEMENT OF NEGLIGENCE?

■ Sam claims the trial court erred in submitting the case to the jury without showing that the animal had exhibited evidence of dangerous propensities. Under South Dakota law a cause of action by someone injured by a domestic animal can arise under a theory of strict liability or negligence. Generally, under a theory of strict liability, the plaintiff is required to show that "[a] possessor of a domestic animal ... knows or has reason to know [of the] dangerous propensities [of the animal which are] abnormal to its class." Restatement (Second) Torts § 509. However, Susan sued under a theory of negligence, claiming Sam was negligent in keeping, harboring, and transporting the animal, in failing to adequately warn Susan, and in failing to properly instruct Susan. Therefore, the theory of strict liability does not apply.

■ Liability in negligence for domestic animals is found in § 518 of the Restatement (Second). It provides:

> Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal, if, but only if,
>
> \*     \*     \*     \*     \*     \*

(b) he is negligent in failing to prevent the harm.

Restatement (Second) of Torts § 518. South Dakota has two cases addressing the law within this jurisdiction which are consistent with the Restatement. In *Eixenberger v. Belle Fourche Livestock Exchange*, 75 S.D. 1, 58 N.W.2d 235 (1953), a jury held a livestock exchange liable for its failure to exercise ordinary care when horses jumped their confinement, roamed onto a public highway and charged plaintiff's automobile. On review this Court stated,

> There is no statute in this state making the owner liable for personal injuries which result from allowing domestic animals to run at large on the highways. Neither is it claimed that these horses had any propensities other than those which are natural or usual in horses when at large and unattended. The gist of the action is that the danger here involved should have been reasonably anticipated and that it was the duty of the defendants to protect plaintiff against it; that the failure to perform that duty was negligence.

*Id.* 58 N.W.2d at 237. In an earlier case, this Court upheld a jury verdict finding liable an owner of a herd of cattle for the injuries done to a plaintiff when a steer broke away from defendant's cattle drive, and, while pursued by defendant's servant on horseback, bolted into plaintiff's garden and knocked her down. *Gilbert v. Matejka*, 42 S.D. 435, 176 N.W. 30 (1920).

In *Eixenberger*, 58 N.W.2d at 237–39, the Court considered the foreseeability of injury to persons or property when animals are at large. The Court discussed foreseeability in terms of the owner's reasonable anticipation of the occurrence which resulted in the injury. *Id.* 58 N.W.2d at 239. The owner or his agent is charged with the knowledge of the

general nature and disposition of a class of livestock, not a particular animal.

In this case, the trial court instructed the jury on the general theory of negligence, rejecting Sam's requested instruction which would have imposed a requirement that the jury find the owner had knowledge that the specific animal had vicious or dangerous propensities. The court did not err in this regard. The evidence revealed these animals were stock cattle, not more docile dairy cattle. Additionally, Sam acknowledged that he and Dean had substantial understanding of the occasionally difficult nature of stock cows, where Joel had less understanding and training regarding stock cows, and Susan had no such training or understanding. The afternoon of the cattle drive was unseasonably hot. The cow which injured Susan had posed problems for even the experienced stock cow manager, Dean Sybesma. Furthermore, Susan was not warned of the particular cow's recent temperament when Dean directed Joel and Susan to move it. Therefore, the trial court correctly instructed the jury regarding the standard of care required of Sam and his agents, Dean and Joel, when transporting stock cattle.

ISSUE II: DID THE TRIAL COURT'S INSTRUCTION #26A PROPERLY STATE THE LAW ON THE ISSUE OF PROVOCATION?

■ Sam next argues that the trial court erred in giving its provocation instruction #26A.* In settling instructions, Sam made the following objection: "Court's proposed instruction 28, the court has instructed that a reasonable person is required to know the qualities and habits of animals—a matter of common knowledge at the time and in the community. And instruction 26A—is inconsistent, that part in particular that has to do with the last sentence where it says: you will carefully notice what the Plaintiff did, if any-

---

* The trial court instructed the jury on the issue of provocation as follows:

> The defendant claims that the plaintiff, in attempting to move the cow, provoked the cow to make the attack upon her, by striking the cow with a cattle prod, without reasonable cause [sic]. If you find that the plaintiff struck the cow, and thereby excited it to make the attack, you will not assume, as a matter of law,

> that the plaintiff was at fault, but you will inquire whether, under the circumstances, the plaintiff had or had not reasonable cause to strike the cow with the cattle prod. You will carefully notice what the plaintiff did, if anything; her situation at the time; and all the circumstance [sic] surrounding her; and decide whether she acted as a person of ordinary prudence or not.

thing; her situation at the time; and all the circumstances.... The key language here is significant; at the time as it appeared to her, which seems to indicate what she knew was important with respect to measuring whether she should have or shouldn't have known the cow was dangerous. But the instruction 28 says she's held to a standard of knowledge equal to that common at the time and in the community." The court stated, "Leave ... 'As it appeared to her' out ... If you strike as it appeared to her—even then you wouldn't be able—it should go out really. It tends to confuse. 'You will carefully notice what the Plaintiff did, if anything, her situation at the time; and all the circumstances surrounding her; and decide whether she acted as a person of ordinary prudence or not.'" The court continued: "'As it appeared to her' shall go out. The last sentence: 'As it appeared to her,' out of instruction 26A, as I think it's improper and it conflicts with instruction 28 because she has a standard of care and her personal feelings about the situation is not necessarily important. We will have to retype that."

The objection raised by Sam to instruction 26A was addressed by the court, and no other objection to instruction 26A was made. On appeal, Sam now raises a different objection to Instruction 26A. He claims that Instruction 26A misstates the law of provocation by improperly adding a second element of reasonable cause.

During settlement of instructions, counsel must specify "the particular ground or grounds upon which the giving or rejecting of any instruction is objected to." SDCL 15–6–51(b). "We have held that no particular formality is required when objecting to instructions; the objection is sufficient if the judge was informed of the possible error so that he might have the opportunity to make corrections." *Frey v. Kouf,* 484 N.W.2d 864 (S.D. 1992); *Hogg v. First National Bank of Aberdeen,* 386 N.W.2d 921, 925 (S.D.1986). In this case, the trial court was not adequately informed of the claimed error and the matter was not adequately preserved for review. ISSUE III: DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY ON THE DEFINITION OF AN INVITEE?

Sam claims that the trial court erred when it instructed the jury on premises liability when the cattle drive was conducted off Sam's property. The trial court instructed the jury as follows:

> An invitee is a person who is upon the premises for a purpose connected with owner's business by invitation of the owner. The invitation may be express or may be implied from the circumstances under which the person enters the premises and the situation in general. In this case you are instructed that Susan J. Sybesma was an invitee of Sam Sybesma, Jr.

■ An instruction on premises liability is not relevant when the occurrence takes place off defendant's property. However, a verdict cannot be set aside because of an erroneous instruction, unless prejudice results. *Schmidt v. Wildcat Cave, Inc.,* 261 N.W.2d 114, 119 (S.D.1977). This Court's standard of review of a trial court's instructions is well established,

> An appellant has the burden to show not only that the instruction given was in error, but also that it was prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict if the appellant's instructions had been given.

*Chambers v. Dakotah Charter, Inc.,* 488 N.W.2d 63, 64, (S.D.1992). We have stated further, that "an appellant who seeks to set aside a civil verdict because of an incomplete or ambiguous instruction must establish that it was prejudicial." *Schmidt v. Wildcat Cave, Inc.,* 261 N.W.2d at 119.

■ Appellant must establish that prejudice resulted from the instruction and that the result would have been different had the erroneous instruction not been given. *Id.* In this case, the trial court defined an invitee. However, the trial court properly instructed the jury on the negligence standard of ordinary care owed. Sam has not established that any prejudice resulted from the instruction or that the result would have been different had the instruction not been given. We therefore find that the trial court erred, but the error was not prejudicial error.

## ISSUE IV: DID THE TRIAL COURT ERR IN INSTRUCTING THAT JOEL SYBESMA WAS AN AGENT OF SAM SYBESMA?

Sam argues that the trial court erred when it instructed the jury that Joel Sybesma was an agent of the appellant, Sam Sybesma.

█ The trial court found that the evidence supported the conclusion as a matter of law that Joel Sybesma was his father's agent for the purpose of the cattle drive. The record supports the court's finding. Sam owned and operated a farming and ranching operation where Joel and his brother, Dean worked at various duties. Dean primarily worked with the stock cows and Joel primarily worked with the dairy operation. However, Sam testified that on the day of the cattle drive he contacted Joel and directed him to assist moving the stock cows from one pasture to another. Testimony from Dean, Joel, and Sam clearly indicates that Sam planned the cattle drive on that day and he led the drive. The record reveals no evidence that Joel "volunteered" to work the cattle drive on the day of the incident. Therefore, the trial court properly instructed the jury on the agency issue.

## ISSUE V: DID THE TRIAL COURT ERR IN REFUSING TO SUBMIT DEFENDANT'S CONTRIBUTION CLAIM AGAINST JOEL SYBESMA TO THE JURY?

█ Finally, Sam also asserts that the trial court erred when at the close of the evidence in Susan's case it ordered the trial of the contribution claim against the third-party defendant, Joel Sybesma separated from Susan's claim. Under the Rules of Civil Procedure of this state the legislature has provided a mechanism by which the court may bifurcate claims as follows:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the state or federal Constitution or as given by a statute.

SDCL 15-6-42(b) (1984). The court is vested with discretion in the matter of separate trials of causes of action. *Christiansen v. Strand*, 81 S.D. 187, 132 N.W.2d 386 (1965).

█ In this case at the beginning of trial Susan moved for separation of the contribution claim against Joel on the basis of prejudice. The trial court initially denied the motion, then granted it at the close of the evidence. The court found that the evidence supported the conclusion that Joel was Sam's agent for the purpose of the cattle drive. To prevent confusion between Sam's potential liability to Susan and Joel's potential liability to Sam, the court refused to send the contribution question to the jury. The trial court exercised its discretion by bifurcating the issue for determination in a separate proceeding. While this court does not necessarily approve of the lateness of the trial court's decision (at the close of the evidence), this Court can not say that the trial court abused its discretion. Sam still has the right to have a trial on his contribution claim.

Based on the foregoing reasons, this Court affirms the trial court in all respects.

MILLER, C.J., SABERS and KONENKAMP, JJ., and JAMES ANDERSON, Circuit Judge, concur.

TUCKER, Circuit Judge, for AMUNDSON, J., disqualified.

JAMES ANDERSON, Circuit Judge, for WUEST, Retired J., not participating.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted did not participate.