## HARLAN D. HEIST V. PETER JACOBY.

### FILED MARCH 17, 1904. No. 13,199.

1. **Animals: USERS OF HIGHWAYS.** Act of February 25, laws 1875, page 190, entitled "An act to restrain sheep, and swine from running at large in the state of Nebraska," *held* to have no relation to the protection of users of highways against unconfined hogs.

2. **Hogs on Highways: OWNER'S LIABILITY.** One whose sole fault is the permitting of young hogs of 60 to 100 pounds weight to go at large upon his own premises, so that they wander across the highway to a neighbor's cornfield, and in running back frighten a passer's horse, *held* not liable for injuries to the passer's equipage and person produced by such fright.

ERROR to the district court for Hamilton county: SAMUEL H. SORNBORGER, JUDGE. *Affirmed.*

*Hainer & Smith* and *J. H. Edmondson,* for plaintiff in error.

*John A. Whitmore, contra.*

HASTINGS, C.

Counsel for plaintiff state, on page 4 of their brief, that the question in this case is whether or not the owner of swine, intentionally permitted to run at large on the public highway, is responsible for damages done by them, through the frightening of his horse, to one who was traveling along the highway in the exercise of due care? This is a fair statement of the question. It is not claimed that there was anything vicious or unusual about the hogs or their conduct. It is not even claimed that the owner knew that they were upon the highway; but he had permitted them to run at large, and the case may be briefly stated as presenting

the question as to whether leaving one's hogs unconfined is such an act of negligence as makes the owner liable for harm done by them in frightening a horse on the public highway.

Defendant's hogs, thus permitted to run at large, wandered across the highway running along defendant's premises and went upon the land of a neighbor. The plaintiff was driving by; the hogs ran out of the neighbor's cornfield, across the road, and apparently somewhat toward plaintiff's mare, with the peculiar noise of excited, running hogs; the mare whirled suddenly, upset the buggy, and broke plaintiff's arm; he demanded damages of the defendant, who admitted he owned the hogs and "let them run," but denied any liability for the injury. The trial court took the view that, assuming all this to be true, there was no neglect of any duty toward the traveling public on defendant's part in letting his hogs out, and that defendant was therefore not liable for the unforseseen injuries to plaintiff. Accordingly, after evidence tending to show the above state of facts had been produced, the jury were instructed to return a verdict for the defendant. A motion for new trial was overruled, and from a judgment on this verdict plaintiff brings error.

Plaintiff bases his case chiefly on the proposition that these hogs were, by statute in this state, required to be restrained from running at large; that, by consequence, they were wrongfully and in violation of law upon the public highway, and the owner therefore liable for any injury they might do in any way to a passer on the highway.

It seems to be conceded by the plaintiff that, if the hogs were rightfully upon the highway, the owner is not liable for any such unforeseen result as their frightening plaintiff's horse, there being, as above indicated, neither allegation nor proof of anything unusual or extraordinary in the hogs or their conduct, the sole negligence alleged being, allowing the hogs loose so that they could get upon the highway.

The defendant on the other hand seems to concede that, if the owner was violating the express statute of the state of Nebraska in permitting them upon the highway, or rather in leaving them out so that they could get upon the highway, he is liable for any damage directly resulting from their presence there. It is insisted, however, that there is no statute of Nebraska forbidding hogs to be upon the highway. It is claimed that the rule at common law is, merely, that one who permits his animals to go upon the highway, under such circumstances that damage to passers in the exercise of ordinary prudence might be reasonably expected to occur, is guilty of negligence and liable for its consequences. It is insisted that all of the cases cited by plaintiff, holding that a liability exists under similar circumstances to those disclosed in the present case, are where some statute expressly prohibits the animals' presence on the highway. It is also insisted that the provisions of the act of February 25, 1875, requiring sheep and swine to be "restrained from running at large in the state of Nebraska" do not in terms refer to highways; and that section two of the act, giving a lien upon trespassing hogs for damages to property, provides for its application to nothing more than trespasses upon private property. This act is the only statute which is claimed to have application to the present case. It is found at page 190, laws of 1875, and is as follows:

"An act to restrain sheep and swine from running at large in the state of Nebraska.

"Sec. 1.    That from and after the first day of March, A. D. 1875, sheep and swine shall be restrained from running at large in the state of Nebraska.

"Sec. 2.    That all damages to property committed by such stock so running at large, shall be paid by the owner of said stock, and the person whose property is damaged thereby, may have a lien upon said trespassing animal for the full amount of damages and costs, and enforce and collect the same by the proper civil action."

It is somewhat difficult to believe that this act was in-

tended in any way to protect passers along the highway against unconfined hogs. It is ordinarily supposed that, where any new right is conferred by statute, and a remedy at the same time provided for its vindication, the remedy so provided is exclusive; if the right previously existed, then the remedy furnished by the statute is cumulative. *Blain v. Willson*, 32 Neb. 302; *Keith & Barton v. Tilford*, 12 Neb. 271. The remedy here provided is merely a lien upon the trespassing animals for damages to property; no penalty is attached to the violation of the first section; it is not even declared unlawful to set the animals at large; no person is designated whose duty it is to restrain them; the provision is simply that the owner shall pay the damages to property, and the injured party is given a lien without being under the necessity of capturing the offending sheep or swine. It does not make the letting of the animals loose an offense against the state of Nebraska, and it does not in any way indicate that protection of the highway was in any manner within the purview of its enactment.

It is true that the title of the act indicates a purpose to restrain sheep and swine from going at large in the state of Nebraska. A law for that purpose can act only upon the owners or those in charge of the animals. It is also true that the act of 1871, known as the "Herd Law," was already in effect, providing a remedy for all trespasses by domestic animals upon cultivated lands, and giving a lien upon the stock by taking it up and substantially following the statute's provisions, but not otherwise. *Bucher v. Wagoner*, 13 Neb. 424. The purpose of this act of 1875 seems to have been to keep sheep and swine away from private premises, and remove the risk of their doing damage there, which was left by the herd law; to widen the remedy for damages done by them, and give a lien against them without capture of the animals damage feasant. The keeping of them off the highway can hardly have been in the legislator's mind. Some means for doing so would have been provided, had such been the purpose.

It is also to be said that the statutes on this subject and

decisions of the courts construing them, recognize a clear distinction between public objects in such legislation and the protection of private rights. A good example of this is the case of *Bates v. Nelson*, 49 Mich. 459, in which a provision that animals at large on public ground might be impounded, and, after having been so at large, might be taken up if found in private grounds, was construed. It was held that cattle which had merely passed through other private premises could not be so taken, the law being intended as a vindication of public rights.

In *Shepard v. Hees*, 12 Johns. (N. Y.) *433, a town by-law against hogs being allowed at large was held, from its connection, to apply solely to being upon the highway or coming from the highway, and to have no application to private injury by the animal's escaping from the owner's pasture into a neighbor's field.

In *McManaway v. Crispin*, 22 Ind. App. 368, and *Beeson v. Tice*, 17 Ind. App. 78, a statute allowing animals at large on uninclosed or common land to be impounded, was held to give only a private remedy, and to have no application to those merely in the public highway.

It would seem that the trial court was right in holding that this statute does not make one who suffers his swine to go upon the highway, *ex necessitate*, negligent and responsible for all the injurious consequences which result, whether naturally to be anticipated or not.

As above stated, the main contention of the plaintiff was based upon the proposition that the act of February 25, 1875, made the letting of hogs loose upon the highway an unlawful act, and defendant's doing so, *ex necessitate*, negligence. It is also claimed, however, with less confidence, that the permitting of them at large in the manner claimed in the present case was negligence in the absence of any statute—was an encroachment upon the public right of way, for whose consequences defendant should be held liable. A large number of cases are cited by plaintiff in error where injuries of the kind complained of in the present one have been held to establish a liability. A typi-

cal one is *Jewett v. Gage,* 55 Me. 538, 92 Am. Dec. 615. It is there held that the frightening by defendant's hog, unattended in the highway, of defendant's horse attached to a wagon, created a liability. But in Maine, as in Massachusetts, a statute forbids the presence of loose animals in a public road.

In *Parker v. Jones,* 1 Allen (Mass.), 270, it is held to be a right of the owner to depasture his land lying in the highway, but that he must do so with due regard for the safety of the traveling public, and in acordance with the laws of Massachusetts making it unlawful to permit one's animals at large in the highways. In that case, the owner of a cow had procured a keeper to attend her while grazing in the highway, and was held not to have violated the requirements of the statute. No case has been found where the mere permission by the owner, of his animals going free upon the highway passing his land, is held wrongful, in the absence of a direct prohibition by statute or ordinance. In this state it was long ago held, in *Delaney v. Errickson,* 10 Neb. 492, and same case on rehearing, 11 Neb. 533, that the English doctrine of a duty to keep one's animals on one's own close had no force in this state. The duty to confine animals was held not to have existed at the first settlement of the state, and to have been created by statutory enactment as the occasion was found to have arisen.

As it has been concluded that the only statute which is appealed to in this case has reference only to trespasses upon private rights, it would seem that the only thing which could be asked of defendant would be that he take no action, which a person exercising reasonable care and prudence would apprehend as likely to endanger the traveling public. *Haughey v. Hart,* 62 Ia. 96. Tried by this test the action of defendant in letting his hogs run can not be said to have been negligent. If the owner had been behind these hogs, driving them from his neighbor's cornfield across the road, it would have been a permissible use of the highway. No liability would have attached to

him in that case, if they had acted precisely in the same manner they did act, and produced the same result, unless, indeed, their original escape was, as against the general public, wrongful. If there was no violation of statutory duty in letting the hogs "run," it can not be said that it was a violation of the general duty to take reasonable precaution against endangering passers. An accident, such as happened, is not, ordinarily, to be anticipated from the mere fact of leaving young hogs at large.

Experiences like those of plaintiff in this case seem to indicate the need of legislation prohibiting the going at large on highways of domestic animals. Such legislation prevails, as we have seen, in many of the states. The time has apparently come for its enactment here, but it does not seem that it should be done by judicially extending a law passed for another and quite different purpose.

It is recommended that the judgment of the district court be affirmed.

AMES and OLDHAM, CC., not concurring.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.