NELLIE S. TRAILL, APPELLEE, V. ERNEST H. OSTERMEIER, JR., APPELLANT.

300 N. W. 375

FILED OCTOBER 10, 1941. No. 31166.

*H. G. Wellensiek,* for appellant.

*Herbert F. Mayer, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and YEAGER, JJ.

EBERLY, J.

This is an action for damages occasioned to an automobile of the plaintiff on November 19, 1939, while, it is alleged, it was lawfully driven along public highway. No. 281, near Grand Island, Nebraska, by its driver, James Traill, plaintiff's son, in "a careful, cautious and prudent manner, at a lawful rate of speed, and with headlights burning, and

observing said highway in a reasonable and prudent manner, considering said highway and the traffic thereon," when three of the hogs of defendant herein, weighing between 150 and 175 pounds each, suddenly ran up and out of the road ditch situated alongside of the highway on which plaintiff's automobile was being driven, and directly into the path of plaintiff's automobile, and colliding with said automobile and damaging the same and causing injuries to the occupants thereof, described and set forth in the petition. It was further alleged "that, prior to said hogs coming up upon the traveled portion of said highway, said hogs were not visible to said James Traill nor could they have been seen by a reasonably prudent person under similar circumstances, and that said James Traill, in the exercise of ordinary care and prudence, did not know their presence to be there and had no reason to believe said hogs to be there." The petition further alleged said hogs were upon said highway, with knowledge of the defendant, and were unattended by him for more than three hours prior to the accident; that the defendant had carelessly and negligently failed to keep said hogs restrained to his premises and, though amply warned of the situation, "defendant negligently and carelessly failed to take possession of said hogs * * * but permitted and suffered his said hogs to wander about along the roadsides and along the highway hereinbefore mentioned after dark at their will, knowing full well of the usual and customary traffic upon said highway No. 281 at the point of the accident hereinbefore mentioned, and without giving any heed thereto and without giving any warning to the public."

In his answer, the defendant, first, admits that the plaintiff had an accident with said automobile on highway No. 281, on or about November 19, 1939, while the car was being driven by her son, James Traill, with the full knowledge and consent and acquiescence of plaintiff, and denies generally the allegations in plaintiff's petition contained; second, denies specifically that said accident and the alleged damages sustained were caused by the negligence of the

defendant; third, in the fourth paragraph of the answer is pleaded and set forth as the defense of contributory negligence, the following: "4. Alleges that, at the time of the accident, the said James Traill was driving the automobile of the plaintiff with her full knowledge, consent and acquiescence; that he was driving in a careless, reckless and negligent manner, and at a high rate of speed; that he failed to have said automobile under proper control; that he failed to keep a proper lookout for any obstacles on the public highway; that he failed to stop said automobile to avoid the accident; that he failed to turn said automobile to avoid the alleged collision; that he had a clear and unobstructed view of the public highway at the time of the accident, and that said accident and the damages resulting therefrom were due entirely to his carelessness and negligence."

The instant action was first commenced in the county court for Hall county, Nebraska, and the petition and answer hereinbefore set forth in substance were first filed in that court. A trial duly had in the county court resulted in a judgment in favor of the plaintiff and against the defendant for the sum of $395 and costs of suit. Thereupon the defendant executed an undertaking for appeal, and prosecuted such appeal from said judgment by lodging a proper transcript of the same, together with the proceedings had in connection therewith, in the district court for Hall county. On July 25, 1940, the parties to this proceeding caused to be filed in the district court for Hall county a stipulation in writing, executed by both parties, and duly entitled in this proceeding, "That the above entitled case shall be tried in the district court of Hall county, Nebraska, on the pleadings filed in and the transcript of the county court of Hall county, Nebraska, appealed from, and that the filing of new pleadings in this court is hereby waived." The cause was tried in the district court, pursuant to the stipulation, and judgment was there entered in favor of the plaintiff. From the order of that court overruling his motion for a new trial, the defendant appeals.

Appellant contends that, there being an absence of a reply, all allegations of new matter contained in his answer will be taken as true, and in this condition the pleadings will not sustain the judgment. He cites *Williams v. Evans*, 6 Neb. 216, and *Penn Mutual Life Ins. Co. v. Sweeney*, 132 Neb. 624, 273 N. W. 46.

From a careful examination of the fourth paragraph of defendant's answer, which we have heretofore set forth herein, with the allegations of plaintiff's petition, disregarding mere form, but giving full effect to the substance of the statements contained in each, it fairly appears that, though matters are pleaded in the answer in affirmative form, in substance and legal effect they amount to no more than a denial of plaintiff's cause of action. The situation here presented invokes the application of the rule well established in this jurisdiction: "Pleading affirmative matters in an answer, which amount to no more than a denial of plaintiff's cause of action, will not necessitate a reply." *Peaks v. Lord*, 42 Neb. 15, 60 N. W. 349. See, also, *Gruenther v. Bank of Monroe*, 90 Neb. 280, 133 N. W. 402; *In re Estate of Kamrath*, 114 Neb. 230, 206 N. W. 770; *Neslund v. Kinnan*, 129 Neb. 339, 261 N. W. 832.

The situation suggests the application of another rule which would obviate defendant's challenge based on the necessity of filing a reply. This case was first tried in the county court and appellant was the appealing party. The code provisions regulating appeals contemplated that in the district court procedure would be followed in all respects in the same manner as though the action had originated in such court. In the instant case this Code would have required the filing of a new petition, a new answer, and, if a reply be necessary because of the allegations in the answer, a new reply. Comp. St. 1929, secs. 21-1305, 21-1306; *Moline, Milburn & Stoddard Co. v. Hamilton*, 56 Neb. 132, 76 N. W. 455.

The stipulation necessarily eliminated compliance with the statutory provisions referred to, and by necessary implication rendered unnecessary the filing of a reply. The

legal effect of a stipulation has been stated as follows: "The parties may, by stipulation, dispense with such of the pleadings as are therein designated, and may dispense altogether with pleadings and submit the case on an agreed statement of facts." 60 C. J. 53. The effect of the stipulation in this case was to dispense with the filing of a reply, had one been otherwise required, and no objections may thereafter be based upon its absence. *Goodenow v. Foster*, 108 Ia. 508, 79 N. W. 288; *Reich v. Cochran*, 74 Hun, 551, 26 N. Y. Supp. 443.

The question of whether the driver of the damaged automobile was guilty of contributory negligence in the driving of the automobile at the time and place of the accident was, under all the evidence in the record, properly a question for the trial jury. It was submitted to them by the trial court, by instructions which we approve, and their determination under the facts and circumstances disclosed by the record is binding upon this court.

It is contended by appellant, however, that "It is not unlawful for domestic animals to be at large on a highway, and the owner of domestic animals straying on the highway and coming into collision with an automobile is not liable for the resulting damage, since such an accident is one that could not reasonably have been anticipated by the owner, even if he was negligent in failing to maintain secure fences." So far as this contention may depend on surrounding circumstances, it may be said that the defendant for a number of years has lived adjacent to highway No. 281 and for seven years or more has been engaged in raising hogs. Highway No. 281, on which the accident occurred, is a hard-surfaced, well-traveled highway extending in a northerly direction from Grand Island, Nebraska. Defendant's farm home is on this highway, six miles north of Grand Island. His hog lot embraced some 25 acres and in it immediately prior to the accident he kept 84 hogs. It was fenced with 22-inch woven hog wire, with three barb wires on top; but at one place in the hog lot fence the defendant had removed the three strands of barb wire to

permit the passage of his cows over the same, thus leaving only the 22-inch woven wire to restrain the hogs, which subsequent events proved insufficient. At about 4:45 p. m. of the day of the accident the defendant was informed that his hogs had escaped from the hog lot and were on the public road. He immediately went out to the road, rounded up twelve head of hogs and returned them to the hog lot, driving them in or through the surrounding fence where he had created the passageway for his cows, and where the 22-inch woven wire fence had been "sagged down" by the escaping hogs. He thought he had returned all hogs that had escaped, but he made no count of the hogs in the lot, and three were still at large. His testimony is: "Q. Did you count your hogs after Menagh warned you they were out? A. No. Q. Did you make any effort to check up if you had all the loose hogs in? A. Made an effort when I was out there to bring ones in he told me about. I investigated and didn't see any more. Q. You are convinced now you didn't have them all? A. Yes; I didn't have them all. Q. Do you know how many you were short? A. No; I don't. Q. You know you were those three short, but you don't know how many more than three? A. No."

The situation presented a case in which the following observations of Evans, J., in *Stewart v. Wild*, 196 Ia. 678, 195 N. W. 266, are enlightening: "It is the fundamental law of the highway that it is subject to the use of the traveling public, and that it must be kept free from such obstructions as are not incident to its use for travel. Whatever endangers travel thereon, and whatever is not incident to the lawful use or care of the highway, becomes, ordinarily, a nuisance and a public peril. In the days of the ox-drawn vehicle, it may be conceded that the presence of a hog upon the highway would not present any imminent danger of a collision with the vehicle. In the later day of the swifter moving horse-drawn vehicle, the presence of a hog at large became an increased danger, though more readily avoidable than in the still later day of the motor vehicle. In these days of general travel by motor vehicle,

we see no room for saying, as a matter of law, that the presence of a hog at large upon the highway does not suggest danger of collision with traveling vehicles. If it could be said, as a matter of law, that the instincts of a hog stimulate him to an avoidance and escape from an approaching vehicle, there might be some room for debate. But it could as well be said, and doubtless more plausibly, that, by the universal verdict of general observation, his instincts and natural tendencies are in the other direction, and that he will more probably, if not certainly, pass in front of a moving vehicle, at whatever time or place it comes within the short radius of his locomotion."

When, added to the natural danger of the roadway, there is the sudden appearance thereon of the panic-stricken hog, from the concealing darkness, momentarily outlined by the confusing glare of the approaching headlights of the oncoming automobile, what was prepared as a path of safety has indeed become a place of peril. This is a necessary result of the use of an instrumentality of transportation which an advancing and progressive civilization has adopted. All men possess this knowledge and are bound to accommodate themselves to the changes effected. As a matter of public policy they must be deemed with reference thereto to have anticipated the natural consequences of the negligence they permit themselves to commit, and necessarily assume full responsibility for their lack of due care.

In *Heist v. Jacoby,* 71 Neb. 395, 98 N. W. 1058, we held, in the absence of statute authorizing a recovery, that, where "One whose sole fault is the permitting of young hogs of 60 to 100 pounds weight to go at large upon his own premises, so that they wander across the highway to a neighbor's cornfield, and in running back frighten a passer's horses," there could be no recovery for injuries to "the passer's equipage and person produced by such fright." This, for the reason that "An accident, such as happened, is not, ordinarily, to be anticipated from the mere fact of leaving young hogs at large." This reason, so stated, under present conditions, is wholly inapplicable to the instant acci-

dent. It is an accepted maxim that "Reason is the soul of the law, and when the reason of any particular law ceases, so does the law itself." Broom's Legal Maxims (5th ed.) 113. So, in *Schindler v. Mulhair*, 132 Neb. 809, 273 N. W. 217, this court, without however discussing the point here under consideration, sustained a recovery of damages sustained by plaintiff "resulting from a collision between an automobile in which she was riding, and which was being operated by her husband, and a horse which was on the public highway, and which horse belonged to the defendant," and which horse the petition alleged "the defendant negligently and wrongfully permitted to be loose, unhitched, untied, and unguarded on the said highway." In the opinion it is stated: "So far as the record is concerned, we are required to consider it as established that negligence was present in permitting the horse to be upon the highway at the time and place and under the circumstances shown."

In *Drew v. Gross*, 112 Ohio St. 485, 147 N. E. 757, the following language was employed, which is applicable to the facts in the instant case:

"The owner of a domestic animal is responsible for negligence in its keeping whereby damage is occasioned. The principal test, as to whether the owner is or is not negligent, is whether he could or could not reasonably have anticipated the occurrence which resulted in the injury. It is a question of fact for the jury whether an owner of horses who turns them loose unattended into a field adjacent to a much-traveled highway in the nighttime, the fence of which field is in such defective condition that the horses may easily stray out onto the highway, could have anticipated that one of the horses would stray out onto the highway and collide with an automobile thereon.

"The owner of live stock is chargeable with knowledge of the propensities of his live stock and is bound to know that horses or cattle when placed in an inclosure where the fence is so defective that they may easily pass out of the inclosure and onto adjacent property will probably do so. * * *

"A statute is not always required to establish the duty of ordinary care. The duty may arise from statute, or it may arise from ordinance, from contract, or from the relation of the parties. Apart from specific statute the law imposes upon every person the duty of using his own property so as not to injure his neighbor. As conditions change and modes of life alter, the duty to observe ordinary care in the use of one's own property, while not altering in its essentials, will alter in its details. What ordinary care demands depends always upon the circumstances of the case, an important factor among which is the fact whether the injury could or could not have reasonably been anticipated from the acts done or left undone by the defendant. When the state was established it was not in general unsafe to permit domestic animals to run at large in the highway outside of the confines of municipalities, and damages from so doing could not generally be reasonably anticipated. With the growth of traffic, particularly automobile traffic, the situation is changed, but the duty to observe ordinary care remains the same. This duty in modern times requires that the owner of live stock exercise ordinary care not to let his live stock out onto a much-traveled highway, because under our modern traffic conditions he can reasonably anticipate that if the live stock stray onto such a highway they are apt to damage persons or property." See, also, *Stewart v. Wild*, 196 Ia. 678, 195 N. W. 266; *Klenberg v. Russell*, 125 Ind. 531, 25 N. E. 596; *Fox v. Koehnig*, 190 Wis. 528, 209 N. W. 708, 49 A. L. R. 903.

We note the challenge to the correctness of the amount of recovery, and the contention that the cost of repairs was the proper measure of damages in the instant case. In view of the evidence actually received at the trial, the instructions given by the trial court properly submitted that question to the determination of the jury.

It follows, therefore, that, no substantial error appearing, the judgment of the trial court is correct, and is

AFFIRMED.