ELDON CAWTHRA, APPELLANT, V. VILAS SHACKELFORD ET AL., APPELLEES.

125 N. W. 2d 186

Filed December 27, 1963. No. 35504.

Daniel E. Owens, for appellant.

Russell & Colfer, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

This is an action for damages filed in the district court for Dundy County, Nebraska, by Eldon Cawthra, plaintiff and appellant, against Vilas Shackelford and Plains Oil Company, a copartnership, defendants and appellants, growing out of a collision between an automobile operated by Vilas Shackelford and a tractor owned and operated by Eldon Cawthra. The action is based on a charge of negligence on the part of defendant, Vilas Shackelford, while engaged in the service of the copartnership of the defendant Plains Oil Company of which he was a partner. By answer the defendants charged that the collision was caused by the negligence of the plaintiff.

The negligence charged against the defendants was that the defendant, Vilas Shackelford, carelessly drove

a 1960 Chevrolet sedan into the left rear wheel of a tractor operated by the plaintiff.

By the answer the collision was admitted but negligence on the part of Vilas Shackelford was denied. Affirmatively it was alleged that the collision was solely and proximately caused by the negligence of the plaintiff in that he made a left turn not at an intersection, without looking to the rear for overtaking traffic; that he made a turn out of an arterial highway without ascertaining that the movement could be made with reasonable safety; that he made a turn not at an intersection but out of an arterial highway without giving any signal to traffic overtaking him from the rear of his intention to do so; and that he drove his tractor at an abnormally slow speed on an arterial highway without keeping a proper lookout for vehicles approaching from the rear.

The answer was generally denied by the plaintiff.

The case was tried to a jury and at the conclusion of the evidence of the plaintiff the defendants moved for a directed verdict in their favor on the ground that the evidence failed to establish the cause of action pleaded by plaintiff in his petition, and on the further ground that the plaintiff's evidence affirmatively showed that he was guilty of negligence which as a matter of law precluded a recovery.

This motion was overruled and the defendants adduced their evidence, after which the parties rested. After the parties rested the defendants renewed their motion for directed verdict which motion was sustained and the petition of the plaintiff was dismissed. The plaintiff duly filed a motion for new trial which was overruled, whereupon the plaintiff appealed from the judgment and the order overruling the motion for new trial.

Two pertinent questions are presented, the answers to which must be considered in the disposition of this appeal. The first is that of whether or not it may be said as a matter of law that the defendant Shackelford

was guilty of negligence which caused or proximately contributed to the accident.

The other is that of whether or not it may be said that the plaintiff was guilty of negligence which proximately caused the accident or contributed to it in a degree sufficient as a matter of law to defeat a right of recovery in his favor.

It is of course true that negligence as a cause of action or as a defense must be proved by the party alleging it, and the burden of proof does not shift during the trial. Knies v. Lang, 116 Neb. 387, 217 N. W. 615, 57 A. L. R. 1022.

It is also true that contributory negligence is ordinarily an affirmative defense and the burden of proving it is on the defendant. McCulley v. Anderson, 119 Neb. 105, 227 N. W. 321.

The rule with reference to the question whether or not evidence of negligence or of contributory negligence shall be submissible to the jury is that where evidence is in conflict and is such that reasonable minds may draw different conclusions therefrom, the questions of negligence, of contributory negligence, and of comparative negligence are for determination by a jury. Parks v. Metz, 140 Neb. 235, 299 N. W. 643; Gross v. Johnson, 174 Neb. 273, 117 N. W. 2d 534.

In order for the plaintiff to have the benefit of these rules and to have the judgment rendered herein set aside, he had the burden on the trial of adducing sufficient proof for submission to a jury the question of negligence of the defendants.

On the other hand the defendants had the burden, in order to retain the judgment, either to defeat the proof of plaintiff that Vilas Shackelford was guilty of any actionable negligence, or to prove that as a matter of law the plaintiff was guilty of negligence or contributory negligence in a degree which would deny to him a right of recovery.

The determination of these questions depends upon the

evidence adduced by the parties on the trial and the reasonable conclusions and inferences which may be said to flow therefrom. In certain areas the facts are not in dispute and in others the evidence is conflicting.

Facts which are not in dispute are that on April 18, 1961, the plaintiff was a tenant farmer who lived on a farm about 4½ miles east of Benkelman, Dundy County, Nebraska, which farm lay to the north of U. S. Highway No. 34, which highway extends eastward past the farm. The highway has black-top paving with a white line extending down its center. The width of the highway is not disclosed by the record. The highway is practically level over the portion which is of concern in this case. The farm buildings used by plaintiff are about 900 feet to the north of the highway. There is a lane or driveway leading southward from the farm buildings. The view from the farm buildings is in the general easterly and southerly direction to all points involved in this case. It is open to view from the east side of the buildings except for a tree or trees the location and number of which are not made clear. The location of the collision was about ¼ mile east of the entrance to the lane leading to the farm buildings. At the time both vehicles were in eastward movement on U. S. Highway No. 34. The collision took place to the north of the centerline of U. S. Highway No. 34. The weather was in good condition and there was nothing except the trees to obstruct the view from the farm buildings. The collision took place at about 2 o'clock p.m.

The plaintiff was injured as a result of the collision. He has had since no recollection of what occurred at the time. He was rendered unconscious and so remained for some considerable period of time.

Marlene Cawthra, the wife of the plaintiff, was a witness in behalf of the plaintiff. She testified that the accident happened about ¼ mile east of the lane or driveway which has been mentioned; that the plaintiff was operating the John Deere tractor which was green

with yellow wheels; that she saw the accident from a distance of 2½ or 3 blocks; that the plaintiff drove down the driveway and she next saw him on the highway going east on the south side thereof about 3 blocks away when he stood about halfway up on the tractor and looked back to the right, then stood up and looked forward to the east; and that as he sat down he pulled the throttle with his right hand, made a motion with his left hand and began turning, and then he proceeded across the highway and she went back to her wash.

She further testified that at the time she observed no automobile on the highway but as she turned back to her wash she heard a sound which sounded like wind and tires and the motor of a car coming from the west. When she looked she saw it just clearing the Guernsey place which is about ½ mile west of the lane or driveway to the plaintiff's place, and she saw a black car with a white or cream line down the middle of it and it was going at such a rate of speed that it was just a blur. After she first saw the automobile she saw that the tractor had crossed to the left side of the road and its front tire bounced off the oil mat onto the shoulder and at that time the Shackelford car hit the tractor. After the collision the tire took off, the plaintiff flew off to the southeast, and the Shackelford car flew and didn't touch the ground until it landed in the borrow pit ditch. She drove to the scene which took 4 or 5 minutes. She gave it as her opinion that at the time she saw the automobile before the collision it was moving at a speed of from 80 to 90 miles an hour. She testified that when she first saw the plaintiff after he entered the highway he was more than halfway between the driveway and the scene of the accident, the total distance which as she said was about ¼ of a mile. She testified that when she saw the automobile it was on the north or left-hand side of the highway.

It is pointed out here that the turn by the plaintiff from his right-hand side of the highway to the other

side is not explained by any evidence in the record. The record discloses that he had in a bag for disposition some dead kittens and chickens and a conjecture appears that the movement was made for the purpose of disposing of them. At this point there was no road or lane or anything else indicating a point to leave or a reason for leaving the highway in that direction at that time.

One Robert Merklin testified on behalf of the plaintiff that Vilas Shackelford passed him going east at an intersection at the edge of Benkelman. He followed in the same direction at about 50 miles an hour and that when he got to the Guernsey crossing, which was about ¾ of a mile west of the scene of the collision, he could see the Shackelford car on the shoulder of the road and could also see the tractor. He thought Mrs. Cawthra was at the scene of the collision when it came into his view.

Richard A. Wagener also testified on behalf of the plaintiff. He said that when he got to the Guernsey driveway he saw there had been an accident ahead. He saw Mrs. Cawthra going to the scene. When he first saw her he was west of her driveway.

Vilas Shackelford testified on behalf of the defendants. He said that the improvements on the property where the plaintiff lived were about 900 feet to the north of the highway; that he saw the tractor moving on the south side of the highway; that at the time he was traveling about 65 miles an hour and the tractor was moving from 8 to 10 miles an hour; that he remained on the south side of the highway until he was within about 50 feet of the tractor at which time he had slowed down to about 50 miles an hour; that at this time and within this distance from it he turned left to pass the tractor and increased his speed to about 65 miles an hour; and that at this time the tractor was turned left onto the north side of the highway and was struck by the automobile which he was operating. He testified that he first

saw the tractor when he was about at the Guernsey crossing and the tractor was probably at a point about halfway between the driveway of the plaintiff and the scene of the collision. He said that when he pulled out to pass the plaintiff was fiddling with gadgets on the tractor.

The evidence discloses that after the collision the tractor was upside down in the middle of the highway and was 40 feet 5 inches from the point of impact. The automobile was 42 feet 9 inches east and north of the point of impact. The left rear wheel was torn off the tractor. There were skidmarks for a distance of 79 feet 9 inches on the north side of the highway made by the automobile. The left side of these marks was 18 inches south of the north edge of the oil mat. These were west from and extended to the point of impact. The highway to the west is plain and open for a distance of ¾ of a mile.

It is on the evidence which is summarized herein, and the inferences and conclusions capable of flowing from it, that the question of whether or not the court erred in sustaining the motion of defendants for a directed verdict and in dismissing the petition of the plaintiff is based.

The testimony of the wife of the plaintiff is capable of an inference that the plaintiff saw and observed Shackelford coming from his rear on the same side of the highway and at a high rate of speed, and that up to a distance of about 50 feet Shackelford gave no evidence of attempt or intention to turn aside to avoid striking the tractor from behind, in the light of which the plaintiff suddenly turned to the left to avoid being struck. This was an inference of course which required consideration along with all the facts bearing on the question of negligence of both the plaintiff and the defendants.

The testimony in the case is capable of a conclusion and inference that the plaintiff saw the automobile approaching at a distance and assumed, but mistakenly,

that he had time to move safely over to the left side of the highway. This required consideration in the light of all disclosed facts and circumstances on the question of negligence of the plaintiff and of the defendant driver.

The testimony is capable of a conclusion and inference that the plaintiff was heedless and therefore ignorant of the approach of the automobile and that he moved into a place of danger which would and should have been avoided by the exercise of ordinary care. In such an event of course no liability would attach to the defendants.

The testimony is capable of still another conclusion and inference, that is, that Vilas Shackelford drove the automobile at such a rate of speed and in such manner as not to permit the plaintiff time and opportunity, in the exercise of good judgment, properly to protect himself from danger which was not of his own making. This of course relates to the question of liability of the defendants for negligence.

This capability of conclusion and inference has its foundation in evidence adduced by the plaintiff where it was testified that Shackelford was traveling at a high rate of speed, that is from 80 to 90 miles an hour; that the plaintiff was traveling at 8 to 10 miles an hour; that Shackelford traveled about $\frac{3}{4}$ of a mile to the scene of the accident while the plaintiff traveled about $\frac{1}{2}$ of a total distance which the evidence indicates was about $\frac{1}{4}$ of a mile; and that Shackelford took no step with a view to passing until he was within 50 feet of the tractor going then at about 50 miles an hour, which speed he had increased to 65 miles an hour by the time the collision took place.

The rule which is applicable in instances such as this has been stated by this court as follows: "In those cases where reasonable minds may differ on the question of whether or not the operator of an automobile exercised the care, caution, and prudence required of him under the circumstances of the particular situation the issue

of negligence on the part of the operator is one of fact to be determined by a jury." Miers v. McMaken, 147 Neb. 133, 22 N. W. 2d 422. See, also, Fulcher v. Ike, 142 Neb. 418, 6 N. W. 2d 610; Petersen v. Schneider, 153 Neb. 815, 46 N. W. 2d 355; Hermansen v. Anderson Equipment Co., 174 Neb. 325, 117 N. W. 2d 791.

In Hermansen v. Anderson Equipment Co., *supra,* with reference to failure to look or looking and failure to see a motor vehicle when it was within the limit of danger, it was said: "Whether one failed to look or looked and failed to see a motor vehicle when it was within the limit of danger is a question for the jury, except in those cases where the evidence is so conclusive that the approaching motor vehicle was within the limit of danger that reasonable minds could not differ thereon."

In the light of these principles it may not well be said that the evidence was so clear and conclusive that the court could say that the plaintiff was guilty of such negligence as to require the direction of a verdict in favor of the defendants and a dismissal of the action. In the light of the rules cited there was evidence which required that a question of negligence on the part of the defendants and also on the part of the plaintiff should have been submitted to the jury under proper instructions.

The judgment of the district court is therefore reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.