NUCLEAR CORPORATION OF AMERICA, Plaintiff,

v.

Harold LANG, Defendant.

Civ. 03681.

United States District Court, D. Nebraska.

Jan. 19, 1972.

Peter E. Marchetti, of Nelson, Harding, Marchetti, Leonard & Tate, Omaha, Neb., for plaintiff.

Robert E. Otte, of Jewell, Otte, Pollock & Gatz, Norfolk, Neb., for defendant.

## MEMORANDUM

RICHARD E. ROBINSON, Chief Judge.

This matter comes before the Court following a trial without a jury. The matter was taken under submission and counsel were granted time to prepare briefs. Briefs have now been presented, and the Court will now render its decision.

Plaintiff alleges in its complaint that on September 3, 1970, at approximately 12:50 o'clock A.M., plaintiff's employee, Bruce O. Buxton, was operating a 1969 White Freightlines tractor with trailer attached, which motor vehicle was possessed by the plaintiff. The trailer of said motor vehicle was loaded with certain steel products manufactured by the plaintiff, and the motor vehicle was being driven in a Northerly direction along U. S. Highway 81 in Pierce County, Nebraska, upon the right half of said highway in a careful and prudent manner and at a reasonable rate of speed.

It is further alleged that defendant at the time alleged conducted a farming operation adjacent to said highway on the East side thereof, with lanes and drives, serving said farming operation, intersecting the highway. In the course of said farming operations, defendant maintained certain livestock and in particular black angus cattle.

It is alleged that when plaintiff's aforesaid motor vehicle arrived at a point upon the highway, approximately four-tenths of a mile North of mile post No. 166 on said highway and in close proximity to a lane, from defendant's farming operation, which intersects said highway, a certain 600 pound black angus heifer owned by the defendant and which defendant had failed to keep confined, ran onto the highway in front of plaintiff's tractor.

It is alleged that plaintiff's employee, Buxton, made efforts to avoid colliding with the heifer by applying the brakes of plaintiff's motor vehicle, but was unable to avert the impact, whereby the

heifer was jammed under the right front fender of the tractor and between said fender and the right front wheel, causing the aforesaid vehicle-combination to depart from the highway and roll over, spilling its load of steel products and pinning plaintiff's employee driver in the tractor. The employee, Buxton, died as a result of the injuries he sustained in this unfortunate occurrence. Plaintiff's tractor-trailer was allegedly damaged and beyond repair, and rendered useless except for scrap. Plaintiff's steel products which were loaded in the trailer of the motor vehicle were also damaged and rendered useless except for scrap.

Plaintiff alleges that the sole proximate cause of the damage it sustained from the wrecking of its motor vehicle and its contents, is the negligence of the defendant, in the following particulars, to-wit:

■ In failing to keep his heifer adequately confined or fenced so as to prevent it from wandering upon the public highway.

■ In failing to anticipate that such unconfined animal could collide with a motor vehicle traveling upon the public highway.

■ In permitting the animal to be without proper care and attendance to prevent its escape from confinement, and to wander at will in and about the public highway, thereby endangering the property and person of members of the public lawfully using said highway, particularly the property of the plaintiff.

Plaintiff seeks damages in the amount of $21,448.48.

In answering the allegations of plaintiff's complaint, the defendant admits that on or about September 3, 1970, at approximately 12:50 o'clock A.M., plaintiff's tractor-trailer was being operated in a Northerly direction, on U. S. Highway No. 81 in Pierce County, Nebraska, by plaintiff's employee, Bruce O. Buxton, now deceased.

Defendant also admits that he at said time conducted a farming operation adjacent to said U. S. Highway No. 81 on the East side thereof and in the course of said farming operation, maintained livestock, which were confined to his premises.

Defendant further alleges that plaintiff's truck ran off said highway and into defendant's feedlot, and that after said incident occurred, a heifer owned by defendant was found dead in the feedlot. Defendant denied that said dead heifer or any of defendant's other cattle were on the highway as alleged in plaintiff's complaint.

Defendant further alleges that if it is found that the heifer in question did escape the confines of the feedlot, that the escape was not due to any negligence on the part of defendant.

Finally defendant alleges that the wrecking of plaintiff's truck was the sole proximate result of the negligence of plaintiff's employee, Buxton. It is alleged that Buxton was negligent in traveling at an excessive rate of speed, failing to maintain a proper lookout, failing to have the vehicle under control and failing to stop or turn in time to avoid the accident.

The defendant, Harold Lang, testified at the trial, that he lives on a farm on the East side of U. S. Highway No. 81, 9 miles North of Norfolk, Nebraska, and has farmed from that point in Pierce County, Nebraska, since 1946.

Mr. Lang testified that on the day before the accident he and his family left his farm at noon leaving the farm unattended and did not return until shortly after midnight, at which time he discovered the wreckage of plaintiff's truck, with the trailer upset partially on the road and overturned tractor in his feedlot.

Mr. Lang sent his wife to call the state patrol while he and his two daughters chased the cattle in the feedlot to and through the barn into a catch-pen South of the barn. The barn has doors on both the North and South sides, as shown on the diagram appended hereto for illustrative purposes.

Corporal Hoeman of the Nebraska State Highway Patrol testified that he responded to a call around 1:00 o'clock A.M., on September 3, 1970, and caused certain photographs to be taken [Exhibits 6 through 12, inclusive, and Exhibit 29]. After discovering the dead Black angus heifer shown in Exhibit 11, he made an inspection of U. S. Highway No. 81 South of the point at which the vehicle had departed said highway.

He made certain measurements which he marked on Exhibit 5, the aerial photograph of the accident scene.

He places the Northernmost part of the wrecked trailer, which extended three feet into the pavement, as being 45 feet South of the fence which parallels the South side of the lane leading to defendant's house, and the tractor 64 feet North of the same fence, and 41 feet East of the East edge of the pavement into defendant's feedlot. The dead heifer was also in the feedlot 41 feet East of the pavement edge and 46 feet North of the right side of the overturned tractor.

Tire marks were visible on the highway 271 feet North of the spot where the dead heifer lay. It is logically inferable that the marks were left by plaintiff's vehicle.

The patrolman identified with the letter "k" on Exhibit five a lane leading to an unoccupied house owned by defendant.

The patrolman testified that he found black hair and hide on the East edge of the road surfacing just North of the lane leading to the unoccupied house. Scuff marks from the dead heifer were found on the shoulder of the road 75 feet North of the place where the first hide and black hair were found on the highway, and more hair was found on the fence 19 feet farther North of the scuff marks at that point on the fence where the tractor had broken through into the feedlot.

The patrolman flashed his light into the driveway, "k", just North of where

the first hide and hair were found on the pavement, and observed animal tracks leading out of the muddy driveway.

There is no real dispute in the record as to the ownership of the dead heifer. All agree that it belonged to defendant.

On the basis of the foregoing facts this Court concludes that the only logical explanation for the accident is that plaintiff's vehicle did come in contact with a Black angus heifer owned by the defendant, and that the collision occurred in the right hand Northbound lane of U. S. Highway No. 81, at a point in front of defendant's farm near a driveway marked "k" on Exhibit 5. As a result of the collision, plaintiff's vehicle left the highway, ran into the ditch on the East side of the road, where the tractor and trailer separated. From the ditch the tractor continued on through the fence to defendant's feedlot, and overturned, whereupon the dead heifer, which had been pinned under the right front fender of the tractor as a result of the impact, was thrown loose landing some 46 feet from the tractor, in the feedlot.

Of course, all of the evidence adduced is circumstantial, and the findings of the last paragraph are simply what this Court finds to be logically and fairly inferable from the evidence thus adduced.

Since this Court has found that the truck hit the heifer on the highway, the fact necessarily follows that the heifer was not in confinement at the time, and if it ever was confined as alleged by the defendant in his answer, then it escaped somehow. If it escaped as a result of defendant's negligence then plaintiff may be entitled to recover.

■ Defendant testified he and his family left the farm unattended for some 12 hours. He stated that he checked the fences around the feedlot, in which he kept his cattle, before leaving. However, he also testified, on cross-examination, that he did not check the gate from the barn to what is known as the catch-pen.[1]

1. Another gate was admittedly left open. Adjacent to and immediately south of the feedyard lies a fenced-in area which

encompasses an old house, a granary, a machine shed, and a windmill. A lane leads out onto the highway. There were

The evidence as to the adequacy of the fences around defendant's feedlot is conflicting.

■ Of course, a farmer who maintains livestock in an area adjacent to an arterial highway is under an affirmative duty to keep the livestock confined so that they cannot wander onto the highway and endanger the lives and property of persons lawfully driving the highway.

In the case of Traill v. Ostermeier, 140 Neb. 432, 300 N.W. 375 [1941], the Nebraska Supreme Court cited with approval the following language from the Iowa case of Stewart v. Wild, 196 Iowa 678, 195 N.W. 266 [1923]:

" 'It is the fundamental law of the highway that it is subject to the use of the traveling public, and that it must be kept free from such obstructions as are not incident to its use for travel. Whatever endangers travel thereon, and which is not incident to the lawful use or care of the highway, becomes ordinarily a nuisance and a public peril.

In the days of the ox-drawn vehicle, it may be conceded that the presence of a hog upon the highway would not present any imminent danger of a collision with the vehicle. In the later day of the swifter moving horse-drawn vehicle, the presence of a hog at large became an increased danger, though more readily avoidable than in the still later day of the motor vehicle. In these days of general travel by motor vehicle, we see no room for saying, as a matter of law, that the presence of a hog at large upon the highway does not suggest danger of collision with traveling vehicles. If it could be said, as a matter of law, that the instincts of a hog stimulate him to an avoidance and escape from an approaching vehicle, there might be some room for debate. But it could as well be said, and doubtless more plausibly, that by the universal verdict of general observation his instincts and natural tendencies are in the other direction, and that he will more likely, if not certainly, pass in front of a moving vehicle at whatever

---

tracks on this lane. The impact occurred in the vicinity of the intersection of the lane and the highway as evidenced by a hoof, hide, hair, scuff, and skid marks. The defendant testified that a wire gate was not closed across the lane leading to the highway. Had it been closed the heifer would not have followed the lane onto the highway. The defendant admits that he left the farm completely unattended for a period prior to the accident. It should have been foreseen that the enclosure would have been a likely area in which the heifer would have been found. The north boundary is formed in part by the feedyard. The catch-pen actually intrudes into the northeast corner. The east and south sides are bounded by pasture. [There is conflicting testimony that the east fence was in part a board fence with the top slats removed.] Whether there was or wasn't a board fence is not important because there was no direct evidence of the particular route that the heifer penetrated into the area. But the evidence considered as a whole presents a highly probable, almost inescapable, conclusion that the heifer somehow did penetrate the enclosure either from the feedyard, the catch-pen or the pasture. It is a possibility that the heifer somehow es-

caped otherwise and then wandered into the enclosure and back out through the open gate. But this possibility is outweighed by the reasonable probability that the heifer reached the enclosure through one of the three other alternatives. The catch-pen gate was not checked thus the heifer could have been in the catch-pen which had a fence of a different construction than the feedyard with no electric fence bordering the inside perimeter. It thus would have been easier for a smaller animal such as a heifer to escape. There is of course no evidence that this occurred but there are so many fine pieces when pieced together lead to only one *reasonable* explanation : the heifer escaped into the enclosure through the feedyard, the catch-pen or the pasture. Since there was potential access to this area from three sides a reasonable man should have anticipated this and accordingly performed the easy task of closing the gate. The failure to do so especially when leaving the farm unattended at night is negligence and this alone supports a finding for the plaintiff. But as the remainder of the opinion discloses there is an alternate rationale which also supports a finding for the plaintiff.

time or place it comes within the short radius of his locomotion.'" 140 Neb. at 438–439, 300 N.W. at 378.

The Nebraska Supreme Court went on to say:

"When, added to the natural danger of the roadway, there is the sudden appearance thereon of the panic-stricken hog, from the concealing darkness, momentarily outlined by the confusing glare of the approaching headlights of the oncoming automobile, what was prepared as a path of safety has indeed become a place of peril. This is a necessary result of the use of an instrumentality of transportation which an advancing and progressive civilization has adopted. All men possess the knowledge and are bound to accommodate themselves to the changes effected. As a matter of public policy they must be deemed with reference thereto to have anticipated the natural consequences of the negligence they permit themselves to commit, and necessarily assume full responsibility for their lack of due care." 140 Neb. at 439, 300 N.W. at 378.

The import of the language used by the Nebraska Court in 1940 is even more compelling today. The *Traill* case establishes a duty upon the part of a farmer, maintaining livestock adjacent to a public highway, to exercise a high degree of care in confining his livestock.

The question in the present case is thus one of whether the defendant exercised that degree of care the law of Nebraska requires of one in his circumstances. Stated another way: Did the defendant exercise that degree of care which the ordinary, reasonable and prudent man would have exercised under the same or similar circumstances. The circumstances to which reference is made included the maintenance of livestock in a pen in close proximity to a heavily traveled public highway; leaving said livestock unattended for a period of twelve hours, with knowledge, in advance, that there would be an extended absence from the farm; checking of the fences surrounding the livestock prior to leaving, but failing to check at least one of the gates to the livestock pen.

The evidence as to the sufficiency of defendant's fences around the area where he was keeping the livestock is conflicting. This Court cannot definitely state that they were inadequate. However, the Court can infer from the fact that the heifer got out of the pen that either a gate was left unlatched or that the fences were inadequate, or both.

■■ Thus, it is the opinion of the Court that the plaintiff has adduced sufficient evidence to raise an inference or presumption of negligence on the part of the defendant. This is to say, of course, that there is enough evidence to bring the doctrine of res ipsa loquitur into play. That doctrine is part of the law of the State of Nebraska. The Nebraska Supreme Court in Asher v. Coca-Cola Bottling Co., 172 Neb. 855, 112 N.W.2d 252 [1961], enunciated the doctrine, as follows:

"The doctrine of res ipsa loquitur is that if a thing which causes injury is shown to be under the control and management of a defendant and the occurrence causing injury is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence in the absence of explanation by the defendant that such occurrence arose from want of proper care." 172 Neb. at 857–858, 112 N.W. 2d at 254.

*See also* Benedict v. Eppley Hotel Co., 161 Neb. 280, 73 N.W.2d 228 [1955]; Sober v. Smith, 179 Neb. 74, 136 N.W.2d 372 [1965]; Nownes v. Hillside Lounge, Inc., 179 Neb. 157, 137 N.W.2d 361 [1965].

The Court in *Asher* went on to say:

"The rule of res ipsa loquitur is a rule of evidence. It is not conclusive and the inference or presumption existing under the rule may be overcome by evidence." 172 Neb. at 859, 112 N.W.2d at 255.

In the instant case, however, the Court is unable to discern, from the record, any evidence which rebuts the inference on presumption of negligence raised by the evidence adduced by the plaintiff. There is simply no adequate explanation of how the heifer in question could have escaped from the enclosure, save for the negligence of the defendant.

The *Asher* case involved an unexplained mouse in a bottle of pop, which caused injury to the plaintiff therein. The present case involves an unexplained heifer in a public highway which caused damages to the plaintiff herein. The bottle of pop in *Asher* was shown to have been manufactured by the defendant. The heifer herein was owned by the defendant, and under his exclusive right of control.

A number of other cases involving collision between motor vehicles and farm animals loose upon public highways have also applied the doctrine of res ipsa loquitur. *See* Mercer v. Byrons, 200 F.2d 284 [1st Cir. 1952]; Moss v. Bonne Terre Farming & Cattle Co., 222 Mo.App. 808, 10 S.W.2d 338 [1928]; Shepard v. Smith, 74 Idaho 459, 263 P.2d 985 [1953]; Bender v. Welsh, 344 Pa. 392, 25 A.2d 182 [1942]. *But see contra,* Poole v. Gillison, 15 F.R.D. 194 [D.Ark.1953]; Wilson v. Rule, 169 Kan. 296, 219 P.2d 690 [1950]; Rice v. Turner, 191 Va. 601, 62 S.E.2d 24 [1950].

In this Court's opinion the inference or presumption of negligence raised by the plaintiff's evidence cannot be classified as a mere presumption, or a slight inference. On the contrary when all the evidence in the case is looked to, the inference that the defendant was somehow negligent in confining his animals, is virtually compelled.[2]

When defendant left his farm, knowing he would be gone for an extended length of time, he should have made arrangements for someone to keep a reasonable watch of his livestock, or he should have taken extra precautions to insure that they were adequately corralled. Surely this is not asking too much of one who is charged with knowledge of the dangerous propensities of his livestock, especially when they are in such close proximity to a heavily travelled road or highway.

By virtue of the evidence adduced in this case the Court finds that the defendant was negligent in confining his livestock, and that plaintiff has sustained damages as a proximate result of defendant's negligence.

Defendant has alleged in his answer that at the time of the accident plaintiff's driver, Bruce Buxton, was acting in the course and scope of his employment with plaintiff, and was guilty of certain acts of contributory negligence, which are attributable to the plaintiff so as to bar any recovery in this action.

However, defendant at trial adduced no evidence from which it could even be inferred that plaintiff's driver had been negligent in operating plaintiff's vehicle. Under Nebraska law contributory negligence, which is more than slight, is an affirmative defense and the burden is upon the defendant to establish such defense by a preponderance of the evidence. Sears, Roebuck & Co. v. Daniels, 299 F.2d 154 [8th Cir. 1962]; Cawthra v. Shackelford, 176 Neb. 147, 125 N.W.2d 186 [1963]; Stevens v. Shaw, 179 Neb. 34, 136 N.W.2d 169 [1965].

There is not even a scintilla of evidence in the present record to support a

---

2. There was testimony that a wind and rain storm occurred in the late afternoon and evening hours preceding the accident. There was also testimony that one branch of a tree, which appeared freshly broken was across the north fence of the defendant's feedyard. The fence was pushed down somewhat by the weight of the branch but there were no cattle tracks in the area of the depression which pre-cludes an explanation that the heifer escaped via this depression. Also it is a matter of common knowledge that livestock may be "spooked" by a storm but obviously no stampede occurred in this instance and there is no evidence by which the Court could attribute the escape of the heifer to an "Act of God" such as the storm.

finding of negligence on the part of plaintiff's driver, and defendant has therefore failed to meet his burden on this issue. Plaintiff is, therefore, entitled to recover for any damages sustained as a result of defendant's negligence.

This Court finds from plaintiff's evidence that it has sustained damages in the amount stated in its complaint— *i. e.*, $21,448.48. Accordingly,

The foregoing shall constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

A Judgment consistent herewith shall be entered in favor of plaintiff.

## APPENDIX