# Richmond.

McCoy v. Norfolk and Carolina Railroad Company.

January 17, 1901.

1. Pleading—*Declaration—Similar Counts—Demurrer—Harmless Error.*— A plaintiff is not injured by sustaining a demurrer to two counts of a declaration where all the evidence that could have been given in under those counts can be given in under remaining counts of the declaration.

2. Master and Servant—*Personal Injury of Servant—Proximate Cause— Concurring Negligence of Master and Fellow Servant.*—Where a servant is injured through the failure of the master to perform any of the duties which the law imposes on him personally, such as providing, inspecting, and keeping in repair reasonably safe and suitable machinery, instrumentalities, and appliances for the use of a servant in his employment, and such failure proximately contributes to the injury, it is no defence for the master that the negligence of a fellow servant also contributed to the injury. But the negligence of the master must proximately contribute to the injury. If the injury follows as a direct and immediate consequence of some intervening cause, the law will refer the injury to the last or proximate cause, and will not trace it to that which was remote.

3. Instructions—*Misleading.*—It is not error to refuse instructions which, if not erroneous, are misleading.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, rendered May 15, 1899, in an action of trespass on the case, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

Nathan McCoy, a brakeman on the Norfolk and Carolina railroad, was injured January 17, 1898. At the time of his injury he was a brakeman on a train of flat cars provided with Janney automatic couplers. Before starting on the trip, the

train was inspected by the company's inspector, and all of the couplings found to be in apparently good order, and this fact was reported to the conductor. On the trip, however, the train parted about the middle, and it was ascertained that one of the couplings was not in good order, and it was necessary to couple the train together with a link and pin. The plaintiff and the conductor were on the rear part of the train, and when it became evident what was necessary to be done, the conductor sent the plaintiff back to the caboose for a link and pin to make the necessary coupling. It was shown that after the link and pin have been put in one car, and a pin set in the other, the necessary coupling can be effected with a stick, even when both cars are provided with Janney couplers, and the rules of the company forbid the use of the hands, but such coupling is much more easily made with the hands than with a stick.

The plaintiff testified that while inserting the link and pin in the forward car, and before he could make any use of his stick, the train was backed, without any suggestion from him or notice to him, and his hand so badly mashed as to necessitate its amputation. The forward brakeman, however, who was standing on the end of the forward car to be coupled, testified that the plaintiff told him that everything was ready, and that, by the plaintiff's direction, he signalled the engineer to back the train, which he did very gently, hardly bringing the cars together, when the plaintiff, who was attempting to couple the cars with his hands, sustained the injury complained of.

The defendant, among other defences, relied on a release from the plaintiff, but the plaintiff insisted that he was an infant, and so not bound by the release.

After the evidence was all in, the plaintiff asked for sundry instructions. The court refused instructions numbered 4 and 5, copied in the opinion of the court, and modified others. The following are the instructions given by the court:

" 1. If the jury believe from the evidence that when Nathan

McCoy signed the release dated February 14, 1898, he was under the age of twenty-one years, then, in the —— of the law he was an infant, and is conclusively presumed not to have had sufficient discretion and judgment to enter into a contract, and therefore he is not bound by it; and the bringing of this suit is a sufficient disaffirmance, and the jury must disregard the said release.

"If the jury believe from the evidence that when Nathan McCoy signed the release dated February 14, 1898, he was in a condition of mind that rendered him incompetent to appreciate the character of the instrument which he executed, that he was mentaly weak, and that there was a great disparity in business experience, in mental capacity, in natural endowments and in intellectual training, between the said McCoy and the representatives of the Norfolk and Carolina Railroad Company who secured the release, then the said release never had any binding force, and must be disregarded by the jury.

"2. That railroad companies personally owe their employees the duty of using ordinary care and diligence to provide for their use, in its service, sound and safe machinery, cars and couplings, materials and instruments, and such appliances as are reasonably calculated to insure their safety, and they are equally bound to inspect and examine all these things from time to time. It is furthermore their duty not to expose their employees to risks beyond those incident to the employment, and such as were in contemplation at the time of the contract of service, and as all these duties are required for the safety and protection of employees they cannot be transferred so as to exempt railroads from liability, and the employee has the right to presume these duties have been performed, and for injuries to employees resulting from a breach of these duties railroad companies are liable to damages.

"3. The duty of railroad companies to use all reasonable care to provide safe and sound machinery, cars and couplings,

and to inspect them and keep them in good order, is a personal duty which those companies impliedly contract to perform, and they cannot by delegating these duties relieve themselves of responsibility, and if the jury believe from the evidence that under the rules of the company the conductor was responsible for the safety and proper care of his train, it was his duty to see that the couplings of the cars in his train were in good order before the starting, to inspect them as often as possible, and, in case of accident, to take immediate action to secure the safety of his train; and the said conductor, in respect to these matters, was not a fellow-servant of the said plaintiff, McCoy, but, on the contrary, was a vice-principal; that is, he stood in the place of the defendant railroad company itself.

"And if the jury shall further believe from the evidence that the conductor knew of the defective automatic coupling when he ordered Nathan McCoy to get a link and pin and couple the train together, and that the use of a link and pin under the circumstances, was a negligent act on the part of the conductor, and that act was the cause of the injury, then the conductor was the representative of the company in respect to this matter, and his knowledge and act in using a link and pin became in law the knowledge and act of the railroad company itself, and even though it appear from the evidence that a fellow-servant of the plaintiff was guilty of negligence in signalling the engineer to back the train, yet if the jury further believe that the fellow-servant's negligence, concurring with said act of the defendant company in using a link and pin produced the injury, and that the act of the conductor in using a link and pin was negligence, they must find for the plaintiff; provided the plaintiff was not himself negligent in the manner in which he made the coupling.

"4. The jury are further instructed that McCoy had a right to rely on the superior knowledge and judgment of the conductor, and if they believe from the evidence that the coupling was a necessity of the occasion, then the duty to make it devolved

upon McCoy, by virtue of his employment, and as obedience is the primary duty of a servant it was encumbent on the said McCoy to couple the cars, unless the act was attended with such great danger that a man of common prudence would not have undertaken it; and if the jury believe from the evidence that the danger of making the coupling was one which a man of ordinary prudence would have believed could be avoided by the use of even extraordinary caution, then as infant McCoy did only that which ordinarily prudent brakemen would have done under like circumstances, his conduct in obeying the order to use a link and pin does not bar him from recovery of damages for the injury which he sustained, provided he was not guilty of contributory negligence, and if the conductor was negligent in ordering the coupling to be made with a link and pin.

" 5. If the jury shall find for the plaintiff they may, in esti-mating the damages, take into consideration his physical and mental suffering arising from the said injury, his loss of wages from the time he was prevented by said injury from working, and proper compensation for his being deprived by the said injury from following such calling or business as he could have followed but for said injury, and the amount already paid the plaintiff by the company.

" The court instructs the jury that if they believe from the testimony that the defendant company used ordinary care and diligence to provide the cars, in coupling which, the accident in the declaration mentioned occurred, with couplers reasonably calculated to insure the safety of the train hands, and used ordi-nary care and skill in the inspection and repair of the same, then the said defendant is not liable by reason of the breaking of the said coupling occurring in its use in transit, and if without the fault of the defendant, and if the jury believe from the evidence that in making said coupling after the discovery of the defect in the automatic coupling the use of the link and pin was, under the circumstances, what an ordinary prudent man would

do, and that the injury was caused by the negligence either of the said McCoy, or of the conductor, or other train hand, then they must find for the defendant."

*C. J. Collins* and *Geo. Pitcher*, for the plaintiff in error.

*D. Tucker Brooke*, for the defendant in error.

Buchanan, J., delivered the opinion of the court.

This action was brought by the plaintiff in error to recover damages for injuries received by him whilst in the service of the defendant company as a brakeman on one of its freight trains. The declaration contains three counts, each of which was demurred to. The court held the first count to be good, and sustained the demurrer to the other counts, which are substantially alike in all material respects, upon the ground that each of them showed upon its face that the act of a fellow-servant was the proximate cause of the injury complained of.

If it were conceded that those counts were good, and that the demurrer ought to have been overruled, we do not think that the plaintiff was prejudiced by the court's action. Whilst the second and third counts set out more in detail some of the grounds relied on to show negligence on the part of the defendant company than is done in the first count, yet the averments of that count were clearly sufficient to entitle the plaintiff to offer in evidence any fact which was admissible under the second and third counts. This being so, the action of the court in sustaining the demurrer to those counts, if erroneous, must be regarded as harmless error. *Childress* v. *C. & O. Rwy. Co.*, 94 Va. 186; 6 Am. & Eng. Enc. Pl. & Pr. 356.

The next and only other assignment of error is the court's refusal to give instructions numbered 4 and 5 offered by the plaintiff, and which are as follows:

"4. If the jury believe from the evidence that the conductor

acquired knowledge of the defective and unsafe condition of the coupling before McCoy attempted to make it; then the conductor was the representative for the company in respect to this matter, and his knowledge became in law the knowledge of the Norfolk and Carolina Railroad Company itself; and, even though they shall further believe from the evidence that a fellow-servant of the plaintiff was guilty of negligence in signalling the engineer to back the train, and such negligence contributed to the injury received by infant McCoy, yet if they believe that the fellow-servant's negligence, concurring with the negligence of the defendant railroad company in failing to maintain safe and sound couplings and appliances produced the injury, this concurring negligence of the fellow-servant does not operate to relieve or diminish the liability of the Norfolk and Carolina Railroad Company, and it is liable for the injuries as though it only were at fault."

" 5. If the jury believe from the evidence that, at the time of the injury to the plaintiff, McCoy, there was trouble with the coupling which the said plaintiff was ordered to make, and that the conductor, knowing the fact, ordered him to substitute a link and pin for the defective automatic coupling, which said order could only be carried out by using the hands; that a fellow-servant prematurely and without warning to the plaintiff, infant McCoy, gave the signal to the engineer to back, and that the said injury was occasioned by this default of the fellow-servant concurring with the negligence of the defendant company in having defective couplings, they must find for the plaintiff."

The rule of law is well settled, that where the servant is injured through the failure of the master to perform any of the duties which the law imposes on him personally, such as providing, inspecting, and keeping in repair and good order reasonably safe and suitable machinery, instrumentalities and appliances for the use of a servant in his employment, and such

fault proximately contributes to the injury, it is no defence for the master that the negligence of a fellow-servant also contributed to the injury. *N. & W. R. Co.* v. *Ampey,* 93 Va. 108, 130, and cases cited.

But to establish a case of concurring negligence in which the master will be held liable, notwithstanding the negligence of the fellow-servant, it must appear that the master's negligence proximately contributed to the injury. If the injury resulted from a certain wrongful act or omission, but only through or by some intervening cause, from which last cause the injury follows as a direct and immediate consequence, the law will refer the damages to the last or proximate cause, and refuse to trace it to that which is remote. Cooley on Torts, p. 73; *N. & W. Rwy. Co.* v. *Brown,* 91 Va. 668, 672-3; *R. & D. R. Co.* v. *Tribble's Adm'r,* 24 S. E. R. 278, 279.

The instructions under consideration do not clearly, if at all, bring this distinction to the attention of the jury. From their language, the jury might very well have believed, at least were not precluded from believing, that the plaintiff would be entitled to recover if the evidence showed that the defendant's negligence in failing to maintain safe couplings caused the cars to separate, and thereby made it necessary for the plaintiff to recouple them, thus remotely contributing to his injury, or furnishing an occasion for it, although they might have further believed that the negligence of a fellow-servant in backing or causing the train to be backed suddenly and unexpectedly would have caused the injury even if the coupling had not been defective.

The rejected instructions, if not erroneous, were misleading, and the court did not err in refusing to give them.

The instructions given covered the case, we think, and were as favorable to the plaintiff as he was entitled to.

Neither of the assignments of error being well founded, the judgment of the Circuit Court must be affirmed.

*Affirmed.*