Present:  All the Justices

LYNN A. STOUT

v. Record No. 001204  OPINION BY JUSTICE CYNTHIA D. KINSER
                                                April 20, 2001
EDWARD L. BARTHOLOMEW, ET AL.

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Joanne F. Alper, Judge

This action arises out of an accident between a

motorcycle operated by the plaintiff, Lynn A. Stout, and a

dog named Jackson.  The defendant, Edward L. Bartholomew

(Bartholomew), and his wife, Carol J. Bartholomew, cared

for the dog.[1]  The dispositive issues on appeal involve the

circuit court's refusal to grant an instruction on

negligence per se, the court's judgment setting aside a

jury verdict in favor of Stout against Bartholomew, and the

court's decision to sustain a demurrer with regard to

claims for failure to warn.  Because we find no error in

the circuit court's judgment on these issues, we will

affirm that judgment.

FACTS AND MATERIAL PROCEEDINGS

In summarizing the evidence adduced at trial, we are

guided by well-established principles of appellate review.

"Even though the trial court set the verdict aside, we

state the facts and reasonable inferences to be drawn

_____

[1] The Bartholomews' daughter owned Jackson.

therefrom in the light most favorable to" Stout, who prevailed against Bartholomew before the jury. Stump v. Doe, 250 Va. 57, 58, 458 S.E.2d 279, 280 (1995); accord Hoar v. Great E. Resort Mgmt., Inc., 256 Va. 374, 378, 506 S.E.2d 777, 780 (1998).

The accident at issue occurred as Stout and her husband, Douglas Olin, were riding their motorcycles northbound on Glebe Road, a four-lane public highway in Arlington County. Olin was riding in front of Stout and slightly to her left. As they approached the intersection between Glebe Road and 37th Street, both Olin and Stout saw a dog, later determined to be Jackson, standing on the sidewalk. In Olin's words, the dog was in "an attack posture[,] . . . baring its teeth, [and] appeared to be growling." As Olin traveled past the dog, the dog ran out into the street and came at him. Olin was able to take evasive action, but the dog leaped up against the front tire of Stout's motorcycle, causing the tire to turn at a right angle to the frame of the motorcycle. Consequently, Stout was thrown forward over the handlebars and landed on the pavement on Glebe Road. As a result of the accident, Stout suffered personal injuries.

The Bartholomews had cared for Jackson from October 1996 through the date of the accident, April 13, 1997.

2

Jackson was a forty-pound, mixed breed dog that was about ten months old at the time of the accident. Mrs. Bartholomew described Jackson's temperament as "sweet" and "animated." She also testified that the neighborhood children frequently played with him. One of those children stated that Jackson was "a very friendly dog." That child's mother, however, indicated that Jackson was "frisky" and acted aggressively toward other male dogs. In spite of that tendency, the evidence established that, prior to the day in question, Jackson had not previously attacked or chased people, cars, bicycles, or motorcycles.

Jackson was not the first dog that the Bartholomews had cared for or owned. They had acquired another dog in approximately 1988 and decided about a year later to install a pet containment system that is based on the use of electronics coupled with training of the pet. A dog wears an electronic shock collar that emits a beep when the dog approaches the boundary, which is established by an underground wire. If the dog crosses the boundary, the collar shocks the dog.[2] The Bartholomews chose this pet containment system instead of some other type of fencing partly because they both had had experience with dogs

---

[2] The brand name of the pet containment system selected by the Bartholomews was "Invisible Fencing System."

getting out of boundaries enclosed by more traditional kinds of fences. They concluded that this system was the most effective method of confining a pet to a specified area.

Clark Associates Invisible Fence Corporation (Clark Associates) sold the "Invisible Fencing System" to the Bartholomews and installed it on their property located on Glebe Road. Clark Associates' contract with Mrs. Bartholomew contained the following warning in block capital letters:

> Occasionally an animal cannot be trained to avoid crossing the boundary, and sometimes even a properly trained animal may cross the boundary. Therefore, [Clark Associates] cannot guarantee that the unit will, in all cases, keep a customer's animal within the established boundary. Accordingly, if a customer has reason to believe that their animal may pose a danger to others or harm itself if it is not kept from crossing the boundaries, customer should not rely solely upon the unit to keep the animal from crossing the boundary.

However, no one from Clark Associates suggested to the Bartholomews that, because of the heavy volume of traffic on Glebe Road, their property was not an appropriate location to use an invisible fence.

During the eight years that the Bartholomews used the fence for their other dog, it "worked perfectly," according to Bartholomew. Because of their previous success with the fence, the Bartholomews decided to utilize the same system

4

when they started caring for Jackson. At that time, the Bartholomews asked Clark Associates to service the system. Clark Associates performed some repairs to the fence where the underground wire had been cut and also provided a shock collar for Jackson to wear.

After the Bartholomews commenced training Jackson by using the shock collar, he responded quickly to the system and did not have any difficulty learning the boundary, according to Mrs. Bartholomew. In fact, she testified that Jackson responded better than their other dog had. Prior to the incident in question, Jackson had never crossed the boundary of the invisible fence while he was wearing the shock collar, nor had the Bartholomews received any complaints about Jackson getting out of their yard. Bartholomew further stated that, when the neighborhood children were in his yard playing with Jackson, the dog did not follow them across the boundary of the invisible fence when the children left the Bartholomews' yard.

On the day of the accident, Bartholomew put the collar on Jackson and let him out of the house. A short time later, Bartholomew received a call from a neighbor advising him that Jackson was not in the yard. Bartholomew subsequently learned about the accident involving Jackson. When he found the dog later that evening near the boundary

5

of the invisible fence, Jackson was still wearing the collar, which was beeping as it should when a dog is near the boundary.

Richard Henry Polsky, an applied animal behaviorist, testified at trial on behalf of Stout. He qualified as an expert in the field of dog behavior and training, including electronic shock collars and pet containment systems. Polsky opined that it was unreasonable for Clark Associates to install the invisible fence on the Bartholomews' property because the heavy volume of traffic on Glebe Road made the fence less effective as a pet containment system. He also testified that a shock collar can cause some dogs to become aggressive toward humans and other dogs, and can prevent a dog from re-entering the boundary after it has crossed the invisible fence. However, Polsky admitted that it was his understanding that the invisible fence and collar were working on the day of the accident, that Jackson was wearing the collar, and that the dog had not previously violated the invisible fence.

Stout filed this action against Bartholomew, Clark Associates, and Invisible Fence Company, Inc. (IFCO), the company that designed and manufactured the invisible fence. In her amended motion for judgment, Stout asserted one count of negligence against Bartholomew, and both

negligence and breach of warranty claims against IFCO and Clark Associates.

In response, IFCO and Clark Associates filed a demurrer to those portions of Stout's amended motion for judgment alleging claims for breach of warranty and/or failure to warn. The circuit court sustained the demurrer, in part, and dismissed Stout's claims against IFCO and Clark Associates for failure to warn.[3] On the morning of trial, Stout dismissed her remaining claims against IFCO.[4] She proceeded to trial on her negligence and breach of warranty claims against Clark Associates and her negligence claim against Bartholomew.

At the close of Stout's evidence, Clark Associates and Bartholomew moved to strike that evidence. The court sustained Clark Associates' motion as to the breach of warranty claim but took the motions under advisement on the negligence counts against Bartholomew and Clark Associates. The jury returned a verdict in favor of Stout against Bartholomew, awarding her damages in the amount of $27,408.

---

[3] The court denied the demurrer with regard to Stout's breach of warranty claims.

[4] Stout reserved her objection to, and right to appeal, the prior dismissal of the failure to warn claim against IFCO.

However, the jury rendered a verdict in favor of Clark Associates.

Bartholomew subsequently renewed his motion to strike and also moved to set aside the jury's verdict. After considering the parties' memoranda and hearing argument of counsel, the circuit court sustained the motions and entered judgment in favor of Bartholomew. The court found that there was no evidence from which the jury could have concluded that Bartholomew did not act reasonably in the restraint of the dog. The court further concluded that Bartholomew could not have anticipated that using the invisible fence to confine Jackson was likely to result in injuries to others. We awarded Stout this appeal.

ANALYSIS

Three of the errors that Stout assigns are dispositive of this appeal. She challenges the circuit court's refusal to instruct the jury on negligence per se, its ruling to set aside the jury verdict in her favor, and the court's sustaining the demurrer with regard to the failure to warn claims. We will address these issues seriatim.

In Stout's first assignment of error, she contends that the circuit court erred in refusing to instruct the jury to find Bartholomew negligent per se if he violated Arlington County Code § 2-6, which requires all dogs to be

8

"secured by a leash or lead, and under the control of the owner . . . or within the real property limits of its owners."[5]  Stout contends that the undisputed evidence establishes that Bartholomew violated this ordinance, and that the purpose of the ordinance is to protect members of the public, such as herself, from the hazards of unleashed dogs.  Thus, argues Stout, she was entitled to have the jury instructed on negligence per se.

In Butler v. Frieden, 208 Va. 352, 352-53, 355, 158 S.E.2d 121, 122-23 (1967), this Court held that a city ordinance, which subjected a dog owner to a fine if the dog "shall go at large upon any public street . . . unless such dog is accompanied by an attendant or held in leash," supplied the standard for deciding whether the owner had exercised the duty of ordinary care.  However, in that case, the defendants did not contest their violation of the ordinance.  Instead, the issue on appeal was "whether the ordinance was designed to protect the public from personal injuries inflicted by dogs."  Id. at 354, 158 S.E.2d at 122.  In concluding that the ordinance was so designed and that the trial court, therefore, did not err in instructing

_____

[5] Stout offered Instruction No. 31, which the circuit court refused.  In pertinent part, that instruction told the jury that, if it believed "from the greater weight of

9

the jury that violation of the ordinance constituted negligence, we recognized that, prior to the enactment of the ordinance, the defendants' failure to keep the dog leashed would not have been a breach of their duty to the plaintiff because the defendants had no reason to believe that the dog would inflict injuries if allowed to run unleashed. However, under the standard created by the ordinance, the defendants breached their duty to the plaintiff because they permitted the dog to roam at large on a public street. Id. at 355, 158 S.E.2d at 123.

Relying on Butler, Stout argues that Arlington County Code § 2-6 supplies the standard for determining whether Bartholomew exercised his duty of care and that the circuit court therefore erred in failing to instruct the jury with regard to negligence per se. However, to establish negligence per se, Stout must initially prove that Bartholomew "violated a statute that was enacted for public safety." Halterman v. Radisson Hotel Corp., 259 Va. 171, 176, 523 S.E.2d 823, 825 (2000) (citing MacCoy v. Colony House Builders, Inc., 239 Va. 64, 69, 387 S.E.2d 760, 763 (1990); Virginia Elec. and Power Co. v. Savoy Const. Co., 224 Va. 36, 45, 294 S.E.2d 811, 817 (1982)). Bartholomew

the evidence that defendant violated the ordinance, than [sic] the defendant is guilty of negligence."

10

contends that Stout failed to do so.  He argues not only that Arlington County Code § 2-6 is not applicable to this case but also that he did not violate that ordinance.  We agree with Bartholomew.

As previously stated, Arlington County Code § 2-6 requires that dogs "be kept secured by a leash or lead, and under the control of the owner . . . or within the real property limits of its owners."  This ordinance cannot, however, be read in isolation.  It must be construed in conjunction with other ordinances having the same purpose.  See Prillaman v. Commonwealth, 199 Va. 401, 405, 100 S.E.2d 4, 7 (1957) ("statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of . . . a single and complete statutory arrangement").

In addition to § 2-6, the Arlington County Code contains other relevant sections dealing with animals.  For instance, Arlington County Code § 2-5 provides that "[i]t shall be unlawful for the owner of any dog to permit such dog . . . to run at large in the county . . . ."  The term "[r]unning at large" is defined as "any dog, while roaming, running or self-hunting off the property of its owner or custodian and not under its owner's or custodian's immediate control."  Arlington County Code § 2-4.

11

When considering these ordinances "as parts of . . . a single and complete statutory arrangement," <u>Prillaman</u>, 199 Va. at 405, 100 S.E.2d at 7, we conclude, as Bartholomew argues, that § 2-6 does not apply in this case. Bartholomew had in place a system designed to keep Jackson within the Bartholomews' real property limits. Bartholomew did not take Jackson off his property without a leash. The exceptions to the requirements of § 2-6, i.e., for "off-lead training, obedience matches and trials, [and] when the dog has a skin condition which would be exacerbated by the wearing of a collar," confirm that § 2-6 applies when an owner chooses to take a dog off the owner's real property limits. When a dog escapes from a pet containment system designed to keep the dog within the owner's real property limits, the owner has not violated § 2-6. Thus, the circuit court was correct in refusing to give Stout's Instruction No. 31 because Arlington County Code § 2-6 does not supply a standard of care applicable to this case.

Notably, Stout did not rely on Arlington County Code § 2-5, which utilizes the term "permit." As we stated in <u>Rice v. Turner</u>, 191 Va. 601, 605, 62 S.E.2d 24, 26 (1950), such language "implies knowledge, consent, or a willingness on the part of the owner for . . . domestic animals to run at large." In <u>Rice</u>, we concluded that the statute at issue

there, which made it "unlawful for the owner of any horse, mule, cattle, hog, sheep, or goat, to permit any such animal to run at large[,]" did not "cover a situation where the owner has used ordinary care to keep his stock confined to his premises." Id. at 604-05, 62 S.E.2d at 25-26. The same conclusion applies in this case.

In her second assignment of error, Stout contends that the circuit court erred in finding that there was no evidence from which the jury could have concluded that Bartholomew did not act reasonably in the restraint of Jackson. In support of her argument, Stout points to Bartholomew's admissions that he relied solely on the invisible fence to keep Jackson confined in the yard; that he knew the invisible fence would not work all the time, for example, when a power outage occurs; and that, even when the fence is working properly, a well-trained dog may still cross the boundary despite the shock received when doing so. Stout also relies on the warning contained in Clark Associates' sales contract, the fact that the Bartholomews' property was located adjacent to a heavily traveled highway, and the evidence that Jackson was a young, recently trained, frisky dog that displayed some aggressiveness when confronted by other male dogs. Stout argues that, based on this evidence, the jury could have

13

concluded that ordinary care requires more than reliance on merely one system of confinement that did not physically restrain Jackson. We do not agree.

In addressing this assignment of error, we are mindful of the following principles of appellate review:

> In a case such as this, where the trial court has set aside a jury verdict for the plaintiff, the verdict is not entitled to the same weight as one which has been approved by the court. But such a verdict must be reinstated and judgment rendered on the verdict if we find any credible evidence in the record that supports the jury's finding. In viewing the evidence, we accord the plaintiff benefit of all substantial conflicts in the evidence and all reasonable inferences that may be drawn from the evidence.

Oberbroeckling v. Lyle, 234 Va. 373, 378, 362 S.E.2d 682, 685 (1987) (citations omitted).

This Court has previously held that the owner of a domestic animal must exercise ordinary care to keep the animal off public highways. Wilkins v. Sibley, 205 Va. 171, 173, 135 S.E.2d 765, 766 (1964); Rice, 191 Va. at 605–06, 62 S.E.2d at 26; see also Page v. Arnold, 227 Va. 74, 80, 314 S.E.2d 57, 61 (1984) (owner of domestic animal "must exercise reasonable care"). Applying that standard of care in Page, we upheld a trial court's decision to strike the plaintiff's evidence because the record was devoid of proof that the pony in question had either the propensity or ability to jump a particular fence. Id. at

14

80, 314 S.E.2d at 61. The plaintiff in that case argued that the pony got out of the field because the fence was inadequate to restrain the animal. Id. at 79, 314 S.E.2d at 60. However, we concluded that "there was no reason for the defendants to have anticipated that confining this pony in this fenced enclosure was liable to result in injury to others." Id. at 80, 314 S.E.2d at 61; see also Wilkins, 205 Va. at 175, 135 S.E.2d at 767; Rice, 191 Va. at 609, 62 S.E.2d at 27.

Similarly, there was no reason for Bartholomew to foresee that using the invisible fence to confine Jackson would cause injury to others. Bartholomew had successfully used the fence with his other dog. After he decided to confine Jackson by utilizing the same system, Jackson responded quickly to the training with the shock collar and had not crossed the boundaries of the fence until the day of the accident. Other than the warning contained in the contract between Clark Associates and Mrs. Bartholomew, there was no evidence that an invisible fence is generally less reliable than other types of fences. There was also no evidence that the system was not functioning properly on the day of the accident or that Jackson had the propensity to chase cars or motorcycles, or to attack humans. As Bartholomew correctly notes, the question in this case is

not whether the invisible fence was always effective. Even Stout's expert witness, Polsky, agreed that no pet containment system is 100 percent effective. Instead, the relevant inquiry is whether Bartholomew's reliance on the invisible fence was reasonable.

For these reasons, we conclude, as a matter of law, that Bartholomew's reliance on the invisible fence to confine Jackson was reasonable and that Bartholomew did not fail to exercise ordinary care to keep Jackson off the public highways. Accordingly, the circuit court did not err in setting aside the jury verdict and entering judgment for Bartholomew. Ordinarily, negligence is an issue for a jury to decide. Parham v. Albert, 244 Va. 73, 77, 418 S.E.2d 866, 868 (1992). However, when there is no evidence to support a contrary conclusion and, thus, reasonable minds could not differ about the issue, as in this case, it is a matter of law for a court to decide. Id.

Finally, Stout asserts that the circuit court erred in sustaining the demurrer with regard to the failure to warn claims. Stout claims that IFCO and Clark Associates had a duty to warn Bartholomew about three specific alleged problems with the invisible fence: (1) that the invisible fence system can cause aggressive or violent behavior in some dogs, (2) that the system can inhibit a dog that has

16

crossed the electronic boundary from returning to the area within the boundary, and (3) that the system is ineffective when used in areas adjacent to heavily traveled streets such as Glebe Road.

Although the circuit court did not articulate any reasons for sustaining the demurrer with regard to the failure to warn claims, IFCO and Clark Associates argued in their memorandum in support of the demurrer that any alleged duty to warn Bartholomew did not extend to Stout and that they had no duty to warn Stout as a member of the public at large.  On appeal, IFCO and Clark Associates claim that, even if the circuit court erred in sustaining the demurrer, the error was harmless because Stout, in pursuing her negligence count against Clark Associates, presented all the evidence that would have been pertinent to the failure to warn claims.  They also point out that the jury returned a verdict against Stout on her negligence claim against Clark Associates.  Stout disagrees and argues that she was precluded from pursuing a distinct legal theory of liability.  We agree with these defendants.

At trial, the premise of Stout's negligence claim against Clark Associates was that it had a duty to exercise ordinary care in the sale, installation, and service of the invisible fence to Bartholomew.  In fact, the circuit court

instructed the jury that "[n]egligence is the failure to use ordinary care."  Stout asserted that Clark Associates breached that duty because the invisible fence, as a pet containment system, created an unreasonable risk of danger to the public from animals that violate the fence's boundary.  Based on testimony from Stout's expert witness, Polsky, Stout claimed that the invisible fence was unreasonably dangerous because it was installed adjacent to the heavily traveled Glebe Road, and because the shock collar can cause some dogs to become aggressive and can prevent a dog from re-entering the boundary.

In McCoy v. Norfolk & C.R. Co., 99 Va. 132, 137, 37 S.E. 788, 788 (1901), this Court held that a trial court's decision sustaining a demurrer to two counts was harmless error because the allegations in the remaining count were sufficient to entitle the plaintiff to introduce the evidence that would have been admissible with regard to the two counts that were dismissed.  See also Childress v. Chesapeake & O. Ry. Co., 94 Va. 186, 189, 26 S.E. 424, 425 (1897).  The alleged problems with the invisible fence upon which Stout relied to claim that the fence was unreasonably dangerous are the same deficiencies about which Stout now contends there was a duty to warn Bartholomew.  Thus, under Stout's theory of her negligence claim against Clark

18

Associates, she presented all the evidence that would have been relevant to her allegations concerning the duty to warn. Accordingly, she was not prejudiced in the presentation of her evidence.

Furthermore, as reflected by the jury's verdict in favor of Clark Associates, Stout failed to establish that Clark Associates breached its duty of ordinary care by selling, installing, or servicing a product that created an unreasonable risk of danger to Stout as a member of the public. In light of the evidence presented and the jury's verdict, we fail to see how Stout could have prevailed on a duty to warn claim. Having lost under her negligence theory, she could not have established that the same alleged problems with the invisible fence made it "dangerous for the use for which it is supplied[.]" Featherall v. Firestone Tire & Rubber Co., 219 Va. 949, 962, 252 S.E.2d 358, 366 (1979). However, proof of that element is necessary to prevail on a cause of action for failure to warn. Id.

Despite Stout's assertion that she was precluded from pursuing a distinct theory of negligence liability, her memorandum to the circuit court in support of her request to file an amended motion for judgment reveals that she was

not advancing a new legal theory through her amendments regarding the failure to warn. Stout stated:

> Defendants in this case will not be prejudiced or unduly inconvenienced by Plaintiff's proposed amendment. Save for including additional facts in paragraphs 33-35 and 49-51 regarding the failure to warn of certain dangers associated with the invisible fence systems, the First Amended Motion for Judgment is virtually identical to the original Motion for Judgment . . . .

> Plaintiff is not attempting to assert new and different claims, or advance a new legal theory, but seeks only to refine the negligence and breach of warranty allegations contained in the original Motion for Judgment.

Stout's intent is further reflected by the fact that, in her amended motion for judgment, she did not assert separate counts against IFCO and Clark Associates for their alleged breach of the duty to warn but included the allegations concerning that duty in her general negligence counts against those defendants. Consequently, we conclude that the judgment of the circuit court sustaining the demurrer, if erroneous, was harmless error. McCoy, 99 Va. at 137, 37 S.E. at 788.

For these reasons, we will affirm the judgment of the circuit court.[6]

Affirmed.

---

[6] In light of our decision, it is not necessary to address Stout's remaining assignment of error.

20